IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

BRETT DIFFLEY, an unmarried man,
                 Plaintiff,

    vs.

NATIONSTAR MORTGAGE LLC, a foreign
corporation, QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON, a
Washington corporation, WELLS FARGO
BANK, N.A., as Trustee for Structured
Adjustable Rate Mortgage Loan Trust, Series
2007-3,

           Defendants.

CASE:

COMPLAINT
[JURY DEMAND]

      THIS ACTION is brought by BRETT DIFFLEY, an unmarried man, hereinafter

"Plaintiff," by and through the undersigned counsel, against the defendants NATIONSTAR

MORTGAGE LLC; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, and

WELLS FARGO BANK, N.A., as Trustee for Structured Adjustable Rate Mortgage Loan

Trust, Series 2007-3, to enforce state and federal statutes, for breach of contract and for

violation of tort law.

COMPLAINT                                  1

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a resident of Washington, he lives in and owns the real property known as 29288 218th Place SE, Black Diamond, King County, WA 98010 ("the Property").

2.      Defendant Nationstar Servicing LLC ("Nationstar"), operates out of Coppell, Texas, is a foreign corporation. Nationstar is currently acting as loan servicer or default loan servicer on behalf of Structured Adjustable Rate Mortgage Loan Trust, Series 2007-3 ("the Identified Securitized Trust") which purportedly owns Plaintiff's mortgage loan account number identified as XXXX4197 ("the Loan"). The Loan is secured by the Property by the Deed of Trust dated January 23, 2007. Nationstar started servicing the Loan after it had been declared to be in default.

3.      Nationstar is one of the largest mortgage loan servicers in the United States with a portfolio of approximately $500 billion. The company continues to add other companies to its conglomeration. At the same time, Nationstar also has racked up thousands of consumer complaints and has gotten on the radar of state and federal regulators because of certain business practices. In March of 2017, the Consumer Financial Protection Bureau ordered Nationstar to pay $1.75 million in civil penalty for violations of the Home Mortgage Disclosure Act. In January of 2017, New York Attorney General Eric Schneiderman launched his investigation of one of Nationstar's companies, Champion Mortgage, for servicing practices of reverse mortgages; the investigation's focus "is examining whether businesses employed tactics that pushed elderly borrowers into foreclosure." In our own backyard, Nationstar entered into a Consent Agreement with Washington Department of Financial Institutions, case number C-15-1666, to comply with the good-faith mediation contained in the Foreclosure Fairness Act and to pay a fine, in 2016.

COMPLAINT                                          2

4.      Defendant Quality Loan Service Corporation of Washington ("QSL"), is a Washington corporation specializing in the conduct of nonjudicial foreclosure in high volume on behalf of others for compensation. QLS too has been sued by consumers for its conduct of nonjudicial foreclosures. QLS was placed under judicial supervision for false notarization of documents it used in nonjudicial foreclosures in the State of Washington.[1]

5.      Defendant Wells Fargo Bank N.A., as Trustee for Structured Adjustable Rate Mortgage Loan Trust, Series 2007-3, ("Wells Fargo"), is reported by Nationstar as "the current owner of the Note secured by the Deed of Trust." The address for Wells Fargo, as given by Nationstar, is 1525 S. Beltline Road, Coppell, TX 75019. Upon information and belief, Wells Fargo receives a fee for acting as the trustee of the named securitized trust.  In said capacity, Wells Fargo holds nothing and owns nothing. Meanwhile, the certificate holders of the Identified Securitized Trust own the certificates that they purchased from the Trust. Upon information and belief, Plaintiff's promissory note, together with notes executed by other borrowers, are secured by a pledge of the assets from the Trust. Under the scenario disclosed by Nationstar and QLS, no one individual owns Plaintiff's Loan, holds Plaintiff's Note, or is the Beneficiary under the Deed of Trust that Plaintiff executed at closing.

6.      Under Washington law, for purposes of the Deed of Trust Act, regardless of ownership, the holder of the note is one with authority to foreclose judicially or nonjudicially.

7.      Plaintiff has never been advised by any one of the named defendants the identification of the holder of the Note he executed at closing. Rather, Plaintiff has been relegated to dealing only with Nationstar, the purported servicer of the Loan. Nationstar holds

---

[1] *Klem v. Washington Mutual Bank*, 176 Wn.2d 771 (2013), QLS was made subject to periodic reporting to the King County Superior Court under case number 08-2-13989-1SEA for compliance of the condition of establishing and maintaining a proprietary electronic notarization process that eliminates the ability of the notary to falsely date documents.

COMPLAINT                                               3

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

itself out as the entity that has complete control and discretion over the Loan, including the authority to approve any loss mitigation option that Plaintiff might be eligible for. Yet, Plaintiff has no means to verify the accuracy or authenticity of any of the representations made by Nationstar, or QLS. This has made it extremely difficult, if not impossible, for Plaintiff to obtain complete and accurate information about his Loan for purpose of curing any default, to pay off the Loan upon transfer of ownership, or in the alternative, to work with the real stakeholders toward certain loss mitigation option that benefits him and the stakeholders.

8.      This Court has subject matter jurisdiction based on 28 U.S.C. §1331 and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367. Venue is properly in the Western District of Washington, King County, where Plaintiff resides.

## COMPLIANCE WITH CONDITION PRECEDENT

9.      Plaintiff has fulfilled all conditions precedent required of him by the Loan documents prior to filing the instant lawsuit.

## FACTUAL ALLEGATIONS

10.      The Loan was originated by First Independent Mortgage Company, which is now defunct. It was serviced by BAC Home Loans, Bank of America, and then Specialized Loan Servicing ("SLS"). As of the present, the servicing of the Loan is with Nationstar. The Loan is a subprime, high interest, adjustable rate loan.

11.      Acting as agent of Nationstar, QLS issued a Notice of Default to Plaintiff by posting it at the Property and mailing it via certified mail ("Second NOD") (Exhibit A, NOD issued by QLS). In this document, Nationstar declared that Wells Fargo, acting as trustee, is "the owner of the Note secured by the Deed of Trust." However, QLS failed to furnish Plaintiff with a copy of the signed Note or the Deed of Trust referenced in the Second NOD.  Other than

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

the naked disclosure by Nationstar and QLS regarding the ownership of the Note, none of the named defendants has provided any documentary support that Plaintiff's Loan was in fact included in the Identified Securitized Trust, or that the Identified Securitized Trust actually owns the Note, or that Wells Fargo, or Nationstar, is the holder of the Note, or that Wells Fargo is the beneficiary under the Deed of Trust that Plaintiff executed at closing.

12.     In fact, when Bank of America serviced the Loan in 2009, its foreclosing agent, Recontrust Company, previously issued another Notice of Default to Plaintiff ("First NOD"). Said Notice of Default made no mentioned of Wells Fargo or the Identified Securitized Trust's involvement. Rather, Plaintiff was informed by Bank of America/ReconTrust that "The creditor to whom the debt is owed: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." The serial loan servicers and inconsistent representations about who the lender, creditor, owner, and the lack of disclosure of who the note holder is all contribute to Plaintiff's feeling of frustration and insecurity about the entity he must talk to rein in his mortgage Loan (Exhibit B, First NOD).

13.     In actuality, Plaintiff had no dealing whatsoever with either Wells Fargo, as trustee of the Identified Securitized Trust, the Identified Securitized Trust itself, or Mortgage Electronic Registration Systems, Inc. ("MERS").  He had never received a single phone call or written communication from any of these entities. To the best of his knowledge, the monies used to fund the Loan at closing did not come from Wells Fargo, MERS, the Identified Securitized Trust, or Nationstar.

14.     For several years, Plaintiff tried desperately to obtain a loan modification with the prior loan servicer, Bank of America and Specialized Loan Servicing, to no avail. After Nationstar allegedly took over the servicing of the Loan, Plaintiff continued to seek a loan

COMPLAINT                                        5

B A R R A Z A   L A W   P L L C
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

1 modification. All in all, Plaintiff has submitted approximately ten (10) application packages for

2 loss mitigation, each time investing days gathering and updating financial information and

3 documentation, and paying the costs for mailing, faxing, and shipping the information

4 overnight.

5       15.    Nationstar, like the previous servicers, continues to solicit Plaintiff to apply for

6 loan modification and other loss mitigation options (Exhibit C, Composite of Nationstar's

7 letters to Plaintiff regarding loss mitigation). Nationstar told Plaintiff that it has a "Foreclosure

8 Prevention Department," dedicated to help struggling homeowners like Plaintiff. Nationstar

9 uses impassioned language in its written inducement for Plaintiff to engage in loss mitigation

10 including, including phrases like "To keep your account up to date, it would be very helpful if

11 we could talk and explore your options," "We know the importance of homeownership and

12 appreciate the opportunity to help you." In July of 2017, Plaintiff was informed in writing that

13 Nationstar has "partnered" with Urban League of Metropolitan Seattle to help Plaintiff "find

14 solutions that could help avoid foreclosure, stay in your home, and continue to enjoy the

15 benefits of homeownership."

16       16.    Ironically, during the same period of time during which Plaintiff actively

17 responded to the described written solicitation and sought assistance from Nationstar to keep his

18 home, Nationstar instructed QLS to advance nonjudicial foreclosure against him and the

19 Property. To foreclose, QLS utilized a Foreclosure Loss Mitigation Form/Declaration Pursuant

20 to RCW 61.24.031. In this document, Nationstar's Document Execution Specialist Chane Davis

21 certifies under penalty of perjury that Nationstar "has exercised due diligence to contact the

22 borrower as required in RCW 61.24.031(5) and the borrower did not respond." (Exhibit D,

23 Foreclosure Loss Mitigation Form). Nationstar's Declaration is simply not true in that Plaintiff

24

COMPLAINT                         6

**B A R R A Z A   L A W   P L L C**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

1   has never stopped trying to obtain loss mitigation, regardless of who the loan servicer is.

2       17.     Although Nationstar sends Plaintiff certain Periodic Statements, it failed to send

3   Plaintiff a year-end escrow analysis for the year of 2016 when the annual computation of the

4   Escrow Account would have been performed. Without said year-end escrow analysis, Plaintiff

5   has been unable to verify what is due and owing on the Loan. Under 12 C.F.R. §1024.17(c)(3),

6   Nationstar is obligated to conduct annual escrow analyses at the completion of the Escrow

7   Account computation year to determine the Loan's monthly escrow account payments for the

8   next computation year. Nationstar is further obligated to provide Plaintiff with the annual escrow

9   account statements within 30 days of the completion of the account computation. Said annual

10  escrow account statements must include, among other things, an account history and a projection

11  of the activity in the account for the next year, pursuant to 12 C.F.R. §1024.17(i). Plaintiff

12  believes he has never received an escrow analysis from Nationstar.

13      18.     In the process of servicing the Loan, Nationstar has imposed certain property

14  inspection and property preservation fees onto the Loan. In his full time occupancy of the

15  Property during the relevant time period, Plaintiff believes he has never witnessed any event of

16  property inspection or property preservation. Plaintiff believes he was never given any notice

17  that such services were occurring or that the fees for such services would be paid by Nationstar

18  and then charged to the Loan. When Plaintiff asked for documentation in support of the necessity

19  for such services and Nationstar's proof of payments for such services, Nationstar has been

20  nonresponsive.

21      19.     Nationstar's practice of imposing property inspection and property preservation

22  upon properties which are occupied by consumers has been called into question in a class action

23

24

COMPLAINT                                    7                    **BARRAZA LAW PLLC**
                                                                 14245-F AMBAUM BLVD SW
                                                                    SEATTLE WA 98166
                                                             Tel. 206-933-7861/Fax206-933-7863

1   lawsuit in Washington.[2]  Property inspection and preservation is the code word for Nationstar 's

2   invasion of homes which are continued to be occupied by consumers in violation of law is a

3   pattern or business practice of Nationstar carried out in the State of Washington and beyond.

4        20.    Upon information and belief, in the process of servicing the Loan, Nationstar has

5   imposed force-placed insurance or Lender Placed Insurance ("LPI") upon the Property without

6   prior notice to Plaintiff. Nationstar's imposition of LPI, which is much more expensive than

7   hazard insurance that a borrower can obtain on his own, is a regular business practice of

8   Nationstar. On information and belief, Nationstar utilizes Assurant Inc., as the LPI insurance

9   company. Nationstar and Assurant were sued and agreed to pay $54 million in settlement to

10  borrowers who have been harmed by the companies' force-placed inflated premiums on their

11  properties.[3]

12       21.    In the process of servicing the Loan, Nationstar has imposed approximately

13  $6,795.27 in "Legal Fees" even though there has been no action or proceeding, including

14  bankruptcy proceeding, implicating or affecting the Property as collateral for the Loan.  The

15  imposition of Legal Fees is unjustified and unwarranted as Nationstar had never informed

16  Plaintiff of any "legal" proceeding involving the Loan or the Property.

17       22.    QLS and Nationstar have provided Plaintiff with certain "Payoff Quote" and

18  Periodic Statements that represent inconsistent numbers which prevents Plaintiff from knowing

19  the true balance of what is due and owing on the Loan in order to (1) payoff the Loan, or (2)

20  exercise his loss mitigation options.

21       23.    QLS issued a Payoff Quote dated August 10, 2017, announcing that it would

22

23  [2] *Jordan v. Nationstar*, 185 Wn.2d 876, 374 P.3d 1195 (2016)

24  [3] *Braynen v. Nationstar Mortgage LLC,* 2015 U.S. Dist. LEXIS 11156 (S.D. Fla., Jan. 2015)

COMPLAINT                                        8

require $907,881.78 to pay off the Loan. Nationstar issued a Periodic Statement dated August 16, 2017, representing a total payoff of $924,160.00 (Interest Bearing Principal Balance $571,345.15 plus Total Amount Due $352,814.85) (Exhibit E, Comparison of Payoff Quote and Periodic Statement of 08/16/2017). There are discrepancies between the itemized amounts in the Payoff Quote and August Periodic Statement. **In between the time that QLS issued the Payoff Quote, and Nationstar issued the August Periodic Statement—a mere eight days— the amount required to cure or to pay off the Loan increased by approximately $16,278.22.**

24.     Within the Periodic Statements dated July and August of 2017, Nationstar has charged Plaintiff "Legal Fees" in the total amount of $6,795.27 even though no "legal" event has occurred, and fees related to nonjudicial foreclosure had already been charged by Nationstar. Meanwhile, the Payoff Quote issued by QLS in August of 2017 omits such substantial amount for Legal Fees (Exhibit F, Payoff Quote compared to Periodic Statements dated July and August of 2017).

25.     Being unable to understand the defendants' blatant inaccurate accounting, Plaintiff issued a Request for Information ("RFI") and Notice of Error ("NOE") to Nationstar, pursuant to Regulation X, RESPA, dated August 11, 2017, inquiring specifically about any property inspection or property preservation that Nationstar had imposed on the Loan. In the RFI and NOE, Plaintiff specifically referenced the Periodic Statement sent by Nationstar which represents $923.50 in property inspection or preservation fees and requested the invoices backing the charges.

26.     In the same RFI and NOE, Plaintiff requested invoices supporting Nationstar's imposition of fees relating to a "prior foreclosure sale." Nationstar has failed to response to

COMPLAINT                                          9                          **BARRAZA LAW PLLC**

1   Plaintiff's RFI or NOE (Exhibit G, RFI, NOE sent by Diffley).

2       27.     Being extremely worried about the impending nonjudicial foreclosure, and the

3   various impermissible and suspect fees and charges, Plaintiff was compelled to hire the

4   undersigned law firm to assist him. On August 25, 2017, plaintiff counsel wrote to Nationstar

5   advising legal representation and requesting the "Opportunity to Meet and Confer" pursuant to

6   the Washington Foreclosure Fairness Act (Exhibit H, Barraza Letter 08/25/2017).  Even though

7   Nationstar has set a nonjudicial foreclosure sale date of September 29, 2017, Nationstar refused

8   to grant Plaintiff's request to meet and confer.

9       28.     On September 1, 2017, staff from plaintiff counsel's office contacted Nationstar

10  to inquire about the reason(s) for the Legal Fees imposed and was told that this was an "old

11  item" and that Nationstar had taken the fees and depleted the Loan's "suspense account." Given

12  these various discrepancies, Plaintiff, through his counsel, asked Nationstar to postpone the

13  nonjudicial foreclosure sale for further investigation. Nationstar's employee, Sandra, #956694,

14  responded that Nationstar is not willing to do so.

15      29.     Plaintiff submitted yet another application for assistance from Nationstar to keep

16  his home. He received confirmation that Nationstar received his Request for Mortgage

17  Assistance via fax (Exhibit I, Fax Confirmation of RMA).

18      30.     Plaintiff counsel issued to Nationstar and QLS a letter via email detailing the

19  discrepancies in the amount to cure the default and to reinstate the Loan and urging both

20  defendants to continue the nonjudicial foreclosure sale for further investigation (Exhibit J,

21  Barraza Letter dated September 5, 2017).

22      31.     For the past years, Plaintiff has made dozens of calls to Nationstar's customer

23  service line in order to get a handle on his Loan Account. Plaintiff has spent hours composing

24

COMPLAINT                                    10                    **B A R R A Z A   L A W   P L L C**
                                                                   14245-F AMBAUM BLVD SW
                                                                   SEATTLE WA 98166
                                                                   Tel. 206-933-7861/Fax206-933-7863

letters and requests and compiling supporting documents for these letters and requests to be sent to Nationstar in his relentless effort to obtain a full accounting of the Loan and to correct the errors committed by Nationstar to no avail. Despite his numerous attempts including the most recent contact with Nationstar through his counsel, Nationstar continues to ignore Plaintiff's requests and maintains that it is still trying to get a hold of Plaintiff for purpose of loss mitigation.

32.     The amount of time that has taken Plaintiff to obtain a full accounting of the Loan is time that Plaintiff could have and would have devoted to his business whereupon he would earn a good income. The experience Plaintiff has with Nationstar has rendered him angry, frustrated, and despondent. Plaintiff has developed certain physical ailments or adverse conditions which coincide with the contacts he has made with Nationstar concerning his Loan account and his effort to obtain a loan modification.

33.     Plaintiff has incurred expenses in trying to get Nationstar to respond to his requests concerning his Loan Account Status and Application for Loss Mitigation. These include office supply, copy and fax charges, delivery and mailing costs, mileage and parking. Plaintiff has also incurred attorney fees as he needed to consult with one or more lawyers about the Loan and what Nationstar has done.

34.     Upon information and belief, in onboarding the Loan, Nationstar put the Loan and Plaintiff's information into its electronic database or system of record without verifying the accuracy of the information as maintained by the prior servicer whatsoever. By Nationstar's admission, the company charged the Loan with "old items" which were maintained in a non-existent suspense account. Thus, it is clear that where the data transferred by SLS has errors or

COMPLAINT                                                    11

1    inaccuracies, Nationstar has imported the errors or inaccuracies into its system without verifying

2    or correcting them.

3         35.    Acting in the capacity of an agent of Nationstar, and having access to the Loan's

4    status, QLS has actual or constructive knowledge of Plaintiff's Loan based on numerous attempts

5    he has made to ascertain the payoff information, to correct the inconsistencies in the numbers

6    represented by Nationstar and QLS, and his continuing effort to seek loss mitigation. The fact

7    that QLS issued the Payoff Quote and other figures to Plaintiff that are inconsistent with what

8    Nationstar has conveyed in the same time period, including the omission of $6,795.27 in Legal

9    Fees, is evidence that QLS does not conduct even the most cursory task of verifying and

10    updating the amount that Plaintiff needs to reinstate the Loan and prevent the foreclosure sale of

11    his home.

12         36.    Even though QLS has actual or constructive knowledge of Plaintiff's efforts to

13    obtain loss mitigation, it continues to advance the nonjudicial foreclosure. The process by which

14    Nationstar and QLS pursue foreclosure while pretending to engage in loss mitigation is known as

15    "dual-tracking." Dual-tracking is specifically prohibited under the Dodd-Frank Amendment as

16    well as under the laws of several states. QLS' failure to verify and update payoff information or

17    reinstatement amount before conveying such information to consumers, and QLS' participation

18    in dual-tracking, is a pattern or business practice, meaning that other consumers have been

19    harmed, or potentially will be harmed, in the same manner that QLS has harmed Plaintiff in this

20    case.

21    **COUNT ONE. NATIONSTAR VIOLATED RESPA AND REGULATION X**

22         37.    Plaintiff re-alleges and incorporates by reference all factual allegations into each

23    and all of the following causes of action.

24

COMPLAINT                   12

38.     RESPA, implemented through Regulation X   requires a transferor servicer to maintain policies and procedures reasonably designed to ensure that it can timely transfer all information and documents in its possession or control relating to the transferred loan to the new servicer in a form and manner that ensures the accuracy of the transferred information and documents and that enables the new servicer to comply with applicable laws and the terms of the new servicer's obligations to the owner or assignee of the mortgage loan.  Nationstar appears to have on-boarded data about the Loan from the prior servicer without verifying its accuracy or completeness.

39.     Plaintiff has a private cause of action against Nationstar under RESPA, implemented through Regulation X. 12 U.S.C. §2605(f) states that, in the case of an action by an individual, "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in an amount equal to the sum of (1) any actual damages to the borrower as a result of the failure; and (2) any additional damages up to $2,000, as the court may allow, in the case of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1)(A)-(B).

40.     RESPA and Regulation X apply to "federally related mortgage loans."  12 C.F.R. § 1024.2(b).  They apply to conduct of "servicers," regarding the administration of borrowers' escrow accounts, error resolution procedures, force-placed insurance, general servicing policies, procedures and requirements, and loss mitigation procedures. 12 C.F.R. § 1024.2(b); 12 C.F.R. §§ 1024.34, 1024.35, 1024.37, 1024.38, and 1024.41.

41.     Nationstar is a "servicer" under Regulation X. 12 C.F.R. § 1024.2(b). When Nationstar took over the Loan in, it was then a "new servicer." The Regulation requires that, "[i]f the new servicer changes either the monthly payment amount or the accounting method ... then the new servicer shall provide the borrower with an initial escrow account statement within 60

COMPLAINT                                                   13

days of the date of servicing transfer." 24 C.F.R. § 3500.17(e)(1). Nationstar violated the Regulation by changing the monthly payment upon service transfer but failing to provide Plaintiff with such initial escrow account statement within 60 days of the date of servicing transfer.

42.     Effective January 10, 2014, as servicer, Nationstar is obligated but failed to comply, in Plaintiff's case involving the Loan, with the following requirements:

a.     conduct annual escrow analyses for borrowers at the completion of the escrow account computation year to determine the borrower's monthly escrow account payments for the next computation year, pursuant to 12 C.F.R. § 1024.17(c)(3); and

b.     provide borrowers with annual escrow account statements within 30 days of the completion of the escrow account computation year, and the annual escrow account statement must include, among other things, an account history and a projection.

43.     Nationstar failed to provide Plaintiff with annual escrow account statements within 30 days of the completion of the escrow account computation years. Said failure violated 12 C.F.R §1024.17(i).

44.     By its continuing refusal to provide Plaintiff with information about his Loan and to correct the identified errors having to do with property preservation and property inspection, Nationstar violated 12 U.S.C. §2605(k) (C) which prohibits a servicer from failure "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

45.     By its refusal to provide Plaintiff with information as requested regarding property inspection and property preservation, when such information was requested to correct

COMPLAINT                                          14                  **B A R R A Z A   L A W   P L L C**

errors, to obtain final balances for purposes of paying off the Loan, or to avoid foreclosure, or for compliance with other standard servicer's duties, Nationstar has violated 12 U.S.C. §2605 (k)(C).

46.     By its failure to explain and document payments regarding Legal Fees as requested when such information was requested to correct errors, to obtain final balances for purposes of paying off the Loan, or to avoid foreclosure, or for compliance with other standard servicer's duties, Nationstar has violated 12 U.S.C. §2605 (k)(C).

47.     By its failure to provide Plaintiff with written notice by mail concerning Nationstar's imposition of Lender Placed Insurance, Nationstar violated 12 U.S.C. §2605(l)(1)(A), (i) through (v).

## COUNT TWO: NATIONSTAR VIOLATED REGULATION IN FAILURE TO RESPOND TO PLAINTIFF'S RFI AND NOE

48.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

49.     Nationstar is required to acknowledge and respond to Plaintiff's NOE dated August 11, 2017. 12 C.F.R. §§1024.35. As to the NOE, Plaintiff clearly put Nationstar on notice of his inquiry concerning the Property Preservation Fees. 12 C.F.R. §1024.35(a), (b)(5), (6) and (7). Where Nationstar refused to respond to Plaintiff's NOE, it violated §1024.35 (d) and (e).

50.      Nationstar is required to acknowledge and respond to Plaintiff's RFI dated August 11, 2017. 12 C.F.R. §§1024.36. As to the RFI,, Plaintiff clearly put Nationstar on notice of request for information concerning "invoices evidencing the Property Inspection charges" and "invoices evidencing the fees related to the prior foreclosure sale." 12 C.F.R. §1024.36 (a). Where Nationstar refused to respond to Plaintiff's RFI, it violated §1024.36 (c) and (d).

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

## COUNT THREE: NATIONSTAR VIOLATED THE FDCPA VIA UNFAIR ACTS AND PRACTICES

51.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

52.     Section 808 of the FDCPA, 15 U.S.C. §1692f, prohibits debt collectors, such as Nationstar, from engaging in unfair or unconscionable means to collect or attempt to collect any debt.  Section 1692e, prohibits debt collectors, such as Nationstar, from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. Nationstar is a debt collector as it "uses any instrumentality of interstate commerce or the mails in the any business the principle purpose of which is the collection of any debt" and who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Nationstar began servicing Plaintiff's Loan after it had been declared in default and Nationstar admits that it was collecting on the Loan on behalf of Defendant Wells Fargo as trustee of the Identified Securitized Trust. Plaintiff is a consumer as defined in §1692a(3) of the Act.

53.     In its servicing of Plaintiff's Loan, Nationstar has used inaccurate and incomplete information because it failed to verify any of the information it received from the prior servicer.  In particular, Nationstar has admitted that the Legal Fees appearing upon the Periodic Statements the company sent to Plaintiff was "old" and came from a "suspend account" that is not appeared on or identified by Nationstar's Periodic Statements. The Loan record should have reflected accurately that Plaintiff has never been sued regarding the Loan and he has never been informed of involvement by any lawyer hired by Nationstar regarding matters within his Loan that would give rise to "Legal Fees."

54.     Plaintiff has inquired, via RFI and NOE, about the property inspection and

B A R R A Z A   L A W   P L L C
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

property preservation fee in the amount of $923.50, as he believes that no such services were ever performed on his Property, and if they were in fact performed, Nationstar cannot prove that it paid for such services.

55. Additionally, Nationstar has serviced the Loan based on inaccurate and incomplete information including escrow amounts, including borrowers' escrow balances, disbursements made on behalf of borrowers, escrow surpluses, and escrow shortages, and Insurance coverage, disbursements, and amounts due, including premiums Nationstar has charged to Plaintiff hazard insurance.

56. Nationstar's acts and practices as described herein constitute unfair acts in violation of Section 808 of the FDCPA, 15 U.S.C. §1692f.

## COUNT FOUR: NATIONSTAR VIOLATED THE FDCPA VIA DECEPTIVE DEBT COLLECTION PRACTICES

57. Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

58. Since Nationstar took over the servicing of Plaintiff's Loan, it has represented to Plaintiff, and others, including credit reporting agencies, directly or indirectly, expressly or by implications, through verbal and written communications, that Plaintiff's Loan has certain unpaid balances, monthly payments, delinquent status, unpaid fees, escrow amounts due and paid, reinstatement amounts, payoff amounts, insurance amounts due, and other fees and costs relating to default and foreclosure. Nationstar had knowledge or reasons to believe that some or all of these material representations were false or cannot be substantiated based on various reasons.

59. The prior servicer's data and records about the Loan upon which Nationstar has

COMPLAINT                                                    17

relied was not verified at all or was not fully verified before Nationstar began to collect or foreclose upon Plaintiff.

60.     Despite Plaintiff's relentless effort to verify the Loan information, Nationstar has failed to consider Plaintiff's various disputes, prior to colleting or foreclosing upon Plaintiff's Loan.   The acts and practices described herein are deceptive and constitute violations of Section 807(2) and (1) of the FDCPA, 15 U.S.C. §§1692e(2)(A) and 1692e(10).

## COUNT FIVE: NATIONSTAR VIOLATED THE WASHINGTON CONSUMER PROTECTION ACT

61.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

62.     Nationstar violated the CPA as to each of the five elements: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) an impact on the public interest; (4) an injury to each plaintiff in her business or property; and (5) causation.

63.     As delineated in the foregoing paragraphs, Nationstar's actions taken in connection with mortgage loan servicing, default servicing, offers and processing of loan modification applications and conduct of nonjudicial foreclosure, rely upon the mail, the telephone, and the internet, are occurring in trade or commerce. Nationstar's use of inaccurate and incomplete information to service Plaintiff's Loan is unfair. Nationstar's imposition of over $6,000.00 in Legal Fees when no lender or servicer has ever sued Plaintiff in connection with the Loan is unfair. Nationstar's imposition of $923.50 in services allegedly performed on Plaintiff's Property, when no documentation for payment of such services was ever produced, is unfair.

64.     Where Nationstar has made representations to Plaintiff, and others, including

COMPLAINT                                          18

credit reporting agencies, that Plaintiff's Loan has certain unpaid balances, monthly payments, delinquent status, unpaid fees, escrow amounts due and paid, reinstatement amounts, payoff amounts, insurance amounts due, and other fees and costs relating to default and foreclosure when in fact, Nationstar had knowledge or reasons to believe that some or all of these material representations were false or cannot be substantiated, such representations are deceptive.

65.     The same enumerated misconduct have been the subject of the Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) where new regulatory requirements were imposed upon loan servicers, and lawsuits brought by the CFPB. These governmental actions taken to curb abuse by loan servicers is evidence that Nationstar's conduct as described, impacts a public interest.

66.     Because of Nationstar's unfair and deceptive conduct, Plaintiff may not be able to pay the accurate amount to reinstate the Loan or to utilize any other loss mitigation option in time to prevent the foreclosure sale of his home. Nationstar's Loss Mitigation Disclosure Form, which represents falsely that Plaintiff has been nonresponsive to Nationstar's invite to loss mitigation is proof that Nationstar in fact pre-determined that it would foreclose and sell the Property instead of allowing Plaintiff to retain his home. Nationstar proximately caused concrete damages to Plaintiff's Property, including such gross inflation of the amount due and owe under the Loan so that the Property would be lost to foreclosure and not retained or disposed of via other loss mitigation options. Nationstar proximately caused Plaintiff to lose money which were spent trying to obtain accurate payoff and reinstatement figures and money paid for fuel costs, office supply, postage and shipping relating to Plaintiff's issuance of NOE and RFI to Nationstar, and money which were paid for attorney fees in support of Plaintiff's effort to determine what it would cost to cure the arrears or to pay off the Loan.

COMPLAINT                                    19

1

**COUNT SIX: WELLS FARGO BANK AS TRUSTEE OF THE SECURITIZED TRUST**
**BREACHED AND NATIONSTAR, ACTING AS IT AGENT, BREACHED THE DEED**
**OF TRUST**

2

3    67.    Plaintiff re-alleges and incorporates by reference all factual allegations into each

4    and all of the following causes of action.

5    68.    Where Plaintiff's Loan is transferred multiple times without notice given to and

6    consent given by Plaintiff, and where the original lender had ceased being in existence, Plaintiff

7    is held hostage by whatever representations made by the mere servicers of the Loan. Based on

8    the Second Notice of Default, Nationstar services the Loan on behalf of the owner of the Note,

9    Wells Fargo, as Trustee for the Identified Securitized Trust. Therefore, all actions taken by

10   Nationstar, on behalf of and for the benefit of Wells Fargo, are those taken by an agent, serving

11   a disclosed principal.

12   69.    Both Nationstar and QLS have represented to Plaintiff that Wells Fargo, as

13   Trustee, is the owner of the Note and the Beneficiary under the Deed of Trust. If these

14   representations are true, Wells Fargo would be considered the Lender, for purpose of the Deed

15   of Trust that Plaintiff executed at closing.

16   70.    Plaintiff and the Lender entered into Deed of Trust in 2007 that provides under

17   Paragraph 9 liability of "additional debt" upon the Lender's taking legal actions to protect its

18   interest in the Property. Regarding "Legal Fees" or "Attorney's Fee," section 9(c) allows

19   additional debt when the lender has to pay: "reasonable attorney's fees to protect its interest in

20   the Property and/or rights under this Security Instrument, including its secured position in a

21   bankruptcy proceeding." (Exhibit K, Deed of Trust). There has been no bankruptcy proceeding

22   or any other legal proceeding affecting the Lender's interest in the Property.

23   71.    Paragraph 26 of the Deed of Trust clarifies that "Lender shall be entitled to

24

COMPLAINT                                    20

recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." There is, to date, no action or proceeding to construe or enforce any term of the Deed of Trust that took place.  Wells Fargo, as trustee of the identified securitized trust, in its capacity as owner of the Note or the purported lender of the Loan, only authorized and allowed its agents, Nationstar and QLS, to initiate and complete nonjudicial foreclosure against Plaintiff, a proceeding that does not require an attorney because there is no judicial oversight. Thus, there could not be any Legal Fees incurred by Wells Fargo.

72.     Where Nationstar charged Plaintiff Legal Fees when said fees are not authorized by the Deed of Trust, Nationstar has breached the Deed of Trust, in its capacity as agent of Wells Fargo.  By allowing and authorizing for Nationstar to charge Plaintiff Legal Fees when said fees are not authorized by the Deed of Trust, Wells Fargo has breached the Deed of Trust. The liability for breach of contract of Nationstar and Wells Fargo exists in conjunction of each other.  The breach of contract has damaged Plaintiff in the amount of Legal Fees charged, and all consequential damages flowing therefrom.

## COUNT SEVEN: NEGLIGENCE AS TO DEFENDANT NATIONSTAR

73.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

74.     As loan servicer, Nationstar owed Plaintiff a duty of care as generally prescribed by RESPA, including but not limited to the duty to accurately determine not only the estimates of escrow expenses, but also of the existence and accuracy of any fee, charge, or cost assessed to Plaintiff's mortgage Loan Account. Nationstar breached this duty by failing to verify loan information possessed by the prior servicer when it onboarded the Loan. Further, Nationstar negligently imposed charges upon the Loan Account for services that were not rendered, or, if

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

services were in fact rendered, Nationstar has no proof of payments for such services, including but not limited to property inspection, property preservation, BPO, title fee, attorney fees and any other defaulted related fees.

75.     As loan servicer, Nationstar was obligated to perform an escrow analysis on the Loan and was obligated further to provide Plaintiff with escrow statements within 30 days of the completion of the escrow account computation year. Nationstar's failure to perform an escrow analysis on the Loan and failure to provide Plaintiff with escrow statements within 30 days of completion of the escrow account computation in the year(s) that Nationstar services the Loan violates the duty of ordinary care due to Plaintiff as servicer of the Loan.

76.     As servicer, Nationstar owes Plaintiff a tort duty to use reasonable care in servicing the Loan. Given the relationship between Nationstar and Plaintiff and the broad and complete discretion that Nationstar has over the Loan and the encumbered Property, and the gravity of foreseeable harm to Plaintiff, Nationstar has failed to exercise such reasonable care.

77.     Nationstar's breach of the duty of care has proximately caused the Loan to be inflated unnecessary by accrued interests, late fees, default-related fees, foreclosure fees and legal fees. While this duty is not of a fiduciary, under the circumstances of this case, where Plaintiff repeatedly inquired and pleaded with Nationstar to provide information to him regarding the Loan and where Nationstar continues to ignore Plaintiff's requests, and further pretends that Plaintiff has not been responsive to Nationstar's invitation to participate in loss mitigation, Nationstar's breach of the duty is particularly egregious.

### COUNT EIGHT: NEGLIGENCE AS TO DEFENDANT QLS

78.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

COMPLAINT                                                    22

**BARRAZA LAW PLLC**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

79.     Defendant QLS, acting as an agent of Nationstar, has breached the duty of ordinary care owed to Plaintiff. QLS has at its disposal, information about Plaintiff's Loan, including the principal amount, accrued interests, late fees and penalties, defaulted related fees and foreclosure related fees. At any given time, QLS would be able to, and should take care to obtain information about the status of the Loan, including whether Plaintiff has applied for loan modification and where his application is in Nationstar's record system.

80.     Despite having access to information about the Loan, QLS fails to verify the accuracy said information and issued the Payoff Quote that directly contradicts Nationstar's total amount needed to reinstate the Loan. One glaring example is QLS did not include $6,795.27 in Legal Fees charged by Nationstar as reflected in the Periodic Statement dated 08/18/2017. This substantial difference in the amount needed to cure the default and reinstate the Loan means a reasonable consumer like Plaintiff would not only be confused about what he must pay, but would make it impossible for Plaintiff to cure or to pay off the Loan.  Upon information and belief, QLS' failure to conduct a cursory investigation to ensure the accuracy and completeness of payoff quotes or notices of default issued before issuing them to consumers, is a pattern or business practice of QLS which adversely affects other consumers who are similarly situated to Plaintiff.

81.     Defendant QLS's breach of the ordinary duty of care makes it extremely difficult if not impossible for consumers like Plaintiff to pay the correct amount to cure in order to prevent nonjudicial foreclosure of their homes. In this case, QLS' failure to include and verify additional fees that Nationstar has charged the Loan, including more than $6,000.00 of Legal Fees, has injured Plaintiff as he is unable to determine what amount to pay to prevent the impending nonjudicial foreclosure of his home. QLS' breach has proximately caused Plaintiff to

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

be out-of-pocket the funds he had to pay his counsel to ascertain the reinstatement amount and to request the continuance of the foreclosure sale as well as the emotional distress he has suffered.

### COUNT NINE: NEGLIGENCE AS TO WELLS FARGO BANK AS PRINCIPAL OF NATIONSTAR AND QLS

82.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

83.     Under the facts of this case, Wells Fargo is the disclosed principal as both Nationstar and QLS had declared Wells Fargo, acting as Trustee for the identified securitized trust, is the owner of the note and the beneficiary under the Deed of Trust; Wells Fargo never repudiated such disclosure made by the co-defendants. As principal, Wells Fargo is charged with notice of facts known to its agents as Nationstar and QLS have a duty to communicate their knowledge to Wells Fargo. Thus, where Plaintiff has proven negligence on the part of Nationstar and QLS, Wells Fargo too is liable to Plaintiff for the actions taken by Nationstar and QLS.

### COUNT TEN: QLS VIOLATED WASHINGTON CONSUMER PROTECTION ACT

84.     Plaintiff re-alleges and incorporates by reference all factual allegations into each and all of the following causes of action.

85.     As the foreclosing trustee, QLS is charged with knowing that the rule of law in Washington is that Plaintiff owes and discharges his obligation to the Holder of the Note or PETE (Person Entitled to Enforce). The PETE's possession of the Note would provide Plaintiff "with a relatively simple way of determining to whom his obligation is owed, and, thus, whom

COMPLAINT                                    24

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

1    to pay in order to be discharged." [4]

2          86.    In this case, QLS has failed to identify who the PETE is. The Second Notice of

3    Default issued by QLS mentions that Wells Fargo, as Trustee, is the Owner of the Note, and that

4    Nationstar "is managing" the Loan. Additionally, QLS attached the Foreclosure Loss Mitigation

5    Form which Nationstar signed under penalty of perjury declaring vaguely that "The beneficiary

6    or beneficiary's authorize agent has exercised due diligence to contact the borrower … and the

7    borrower did not respond." Nowhere in such Second Notice of Default did QLS identify the

8    Note Holder or PETE, or the Beneficiary (<u>Exhibit A, Second NOD</u>).

9          87.    Upon information and belief, QLS has used a template for Notice of Default and

10   has issued many more notices of default that suffer from the same deficiency—failure to

11   identify the note holder or the beneficiary by name.

12         88.    QLS' practice of using a template for notices of default issued to Washingtonians

13   without determining who the note holder and without identifying the beneficiary by name

14   violates Washington Consumer Protection Act.

15         89.    QLS violated the CPA as to each of the five elements: (1) an unfair or deceptive

16   act or practice; (2) in trade or commerce; (3) an impact on the public interest; (4) an injury to

17   each plaintiff in her business or property; and (5) causation.

18         90.    QLS' business of conducting nonjudicial foreclosure using the mail, the internet,

19   and the telephone is carried out in trade or commerce. QLS' practice of using a template for

20   notices of default which fails to identify the note holder and beneficiary by name is unfair

21   because it prevents consumers like Plaintiff to communicate with the note holder/beneficiary for

22   purposes of reinstating the loan, seeking loan modification or other loss mitigation in a timely

23   _____

24   [4] *UCC Report on Mortgage Notes*, http://www.uniformlaws.org/shared/committeesmaterial/, *Brown v. Dept. of Commerce*, 184 Wn.2d 509, 359 P.3d 771 (2015).

COMPLAINT                                            25

B A R R A Z A   L A W   P L L C
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

fashion to prevent foreclosure.

91.     Where QLS has made representations to Plaintiff, and others, that Plaintiff's Loan has certain unpaid balances, monthly payments, delinquent status, unpaid fees, amounts due and paid, reinstatement amounts, payoff amounts, and other fees and costs relating to default and foreclosure without updating or verifying them prior to preparing and issuing notices of default and payoff quotes, such representations are deceptive.

92.     Where QLS knew or should have known that certain consumers, including Plaintiff, are pursuing loss mitigation, but advances nonjudicial foreclosure against their property nonetheless and causing the premature sale of consumers' homes, QLS' practice of dual-tracking is unfair.

93.     The business of nonjudicial foreclosure impacts one or more important public interests as declared by the legislature of Washington in enacting the Deed of Trust Act and the Foreclosure Fairness Act.

94.     Because of QLS' unfair and deceptive conduct, Plaintiff has had to spend time and money to ascertain the correct amount he needs to reinstate the Loan. But for QLS' unfair and deceptive conduct, Plaintiff would be able to get the accurate amount to reinstate the Loan or to benefit from any other loss mitigation option prior to the foreclosure sale of his home.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, pursuant to the cited statutes and tort laws, and the Court's own powers to grant legal or equitable relief, request that the Court:

(A) Compel Nationstar to provide Plaintiff with a full accounting of the Loan, including the supporting invoices, receipts, proof of payments for each item it charges the Loan, effective the day Nationstar took over servicing;

COMPLAINT                                          26

**B A R R A Z A   L A W   P L L C**
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax206-933-7863

(B) Compel Nationstar to take remedial actions and credit the Loan or refund Plaintiff of all amounts unlawfully charged, collected, or suspended;

(C) Suspend the impending nonjudicial foreclosure on condition that Nationstar and QLS produce an accurate, complete and verifiable reinstatement quote to allow Plaintiff to pay off the Loan or to benefit from an appropriate loss mitigation option;

(D) Award actual and consequential damages to Plaintiff as against Wells Fargo and Nationstar for breach of contract of the Deed of Trust in an amount to be proven at trial;

(E) Award tort damages to Plaintiff as against all three defendants for Negligence, including emotional distress in an amount to be proven at trial;

(F) Award all damages, including statutory damages, attorney fees and costs, to Plaintiff as provided by RESPA and FDCPA;

(G) Award damages under WACPA, including treble damages, attorney fees and costs;

(H) Award attorney fees and costs pursuant to RCW 4.84.330 for Wells Fargo and Nationstar's breach of the Deed of Trust;

(I) Any and all other relief the Court deems just.

DATED this 11th of September 2017.

BARRAZA LAW, PLLC

_____
VICENTE OMAR BARRAZA, WSBA 43589
Counsel for Plaintiff
14245-F Ambaum Blvd SW, Seattle WA 98166
206-933-7861 Fax 206-933-7863

COMPLAINT

27