UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRETT DIFFLEY,

    Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC, *et al.*,

    Defendants.

Case No. C17-1370 RSM

ORDER GRANTING IN PART NATIONSTAR AND WELLS FARGO'S MOTION TO DISMISS, DENYING QLS'S MOTION TO DISMISS, AND GRANTING LEAVE TO AMEND

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkts. #11 and #13. Defendants seek dismissal of all claims with prejudice with respect to alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Deed of Trust Act ("DTA"), and Washington State's Consumer Protection Act ("CPA"). *Id.* Plaintiff opposes the motion. Dkt. #17. Having reviewed the record before it, and neither party having requested oral argument on the motions, the Court now GRANTS IN PART Defendants Wells Fargo and Nationstar's motion and DENIES QLS's motion as discussed herein. The Court further grants Plaintiff limited leave to amend as set forth below.

## II. BACKGROUND

On September 11, 2017, Plaintiff filed his Complaint, setting forth allegations pertaining to his mortgage. Dkt. #1. Plaintiff owns property located at 29288 218th Place SE, Black

ORDER
PAGE - 1

Diamond, King County, WA 98010. Dkt. #1 at ¶ 1. Plaintiff names Defendant Nationstar Servicing LLC ("Nationstar"), as the servicer of his defaulted mortgage loan; Defendant Wells Fargo Bank N.A. ("Wells Fargo"), as Trustee for Structured Adjustable Rate Mortgage Loan Trust, Series 2007-3; and Defendant Quality Loan Service Corporation of Washington ("QLS") in this action.

Plaintiff alleges the factual background to his claims as follows:

> 10. The Loan was originated by First Independent Mortgage Company, which is now defunct. It was serviced by BAC Home Loans, Bank of America, and then Specialized Loan Servicing ("SLS"). As of the present, the servicing of the Loan is with Nationstar. The Loan is a subprime, high interest, adjustable rate loan.
>
> 11. Acting as agent of Nationstar, QLS issued a Notice of Default to Plaintiff by posting it at the Property and mailing it via certified mail ("Second NOD") (Exhibit A, NOD issued by QLS). In this document, Nationstar declared that Wells Fargo, acting as trustee, is "the owner of the Note secured by the Deed of Trust." However, QLS failed to furnish Plaintiff with a copy of the signed Note or the Deed of Trust referenced in the Second NOD. Other than the naked disclosure by Nationstar and QLS regarding the ownership of the Note, none of the named defendants has provided any documentary support that Plaintiff's Loan was in fact included in the Identified Securitized Trust, or that the Identified Securitized Trust actually owns the Note, or that Wells Fargo, or Nationstar, is the holder of the Note, or that Wells Fargo is the beneficiary under the Deed of Trust that Plaintiff executed at closing.
>
> 12. In fact, when Bank of America serviced the Loan in 2009, its foreclosing agent, Recontrust Company, previously issued another Notice of Default to Plaintiff ("First NOD"). Said Notice of Default made no mentioned of Wells Fargo or the Identified Securitized Trust's involvement. Rather, Plaintiff was informed by Bank of America/ReconTrust that "The creditor to whom the debt is owed: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." The serial loan servicers and inconsistent representations about who the lender, creditor, owner, and the lack of disclosure of who the note holder is all contribute to Plaintiff's feeling of frustration and insecurity about the entity he must talk to rein in his mortgage Loan (Exhibit B, First NOD).
>
> . . .
>
> 14. For several years, Plaintiff tried desperately to obtain a loan modification with the prior loan servicer, Bank of America and Specialized Loan

Servicing, to no avail. After Nationstar allegedly took over the servicing of the Loan, Plaintiff continued to seek a loan modification. All in all, Plaintiff has submitted approximately ten (10) application packages for loss mitigation, each time investing days gathering and updating financial information and documentation, and paying the costs for mailing, faxing, and shipping the information overnight.

15. Nationstar, like the previous servicers, continues to solicit Plaintiff to apply for loan modification and other loss mitigation options (Exhibit C, Composite of Nationstar's letters to Plaintiff regarding loss mitigation). Nationstar told Plaintiff that it has a "Foreclosure Prevention Department," dedicated to help struggling homeowners like Plaintiff. Nationstar uses impassioned language in its written inducement for Plaintiff to engage in loss mitigation including, including phrases like "To keep your account up to date, it would be very helpful if we could talk and explore your options," "We know the importance of homeownership and appreciate the opportunity to help you." In July of 2017, Plaintiff was informed in writing that Nationstar has "partnered" with Urban League of Metropolitan Seattle to help Plaintiff "find solutions that could help avoid foreclosure, stay in your home, and continue to enjoy the benefits of homeownership."

16. Ironically, during the same period of time during which Plaintiff actively responded to the described written solicitation and sought assistance from Nationstar to keep his home, Nationstar instructed QLS to advance nonjudicial foreclosure against him and the Property. To foreclose, QLS utilized a Foreclosure Loss Mitigation Form/Declaration Pursuant to RCW 61.24.031. In this document, Nationstar's Document Execution Specialist Chane Davis certifies under penalty of perjury that Nationstar "has exercised due diligence to contact the borrower as required in RCW 61.24.031(5) and the borrower did not respond." (Exhibit D, Foreclosure Loss Mitigation Form). Nationstar's Declaration is simply not true in that Plaintiff has never stopped trying to obtain loss mitigation, regardless of who the loan servicer is.

17. Although Nationstar sends Plaintiff certain Periodic Statements, it failed to send Plaintiff a year-end escrow analysis for the year of 2016 when the annual computation of the Escrow Account would have been performed. Without said year-end escrow analysis, Plaintiff has been unable to verify what is due and owing on the Loan. Under 12 C.F.R. §1024.17(c)(3), Nationstar is obligated to conduct annual escrow analyses at the completion of the Escrow Account computation year to determine the Loan's monthly escrow account payments for the next computation year. Nationstar is further obligated to provide Plaintiff with the annual escrow account statements within 30 days of the completion of the account computation. Said annual escrow account statements must include, among other things, an account history and a projection of the activity in the account for the next year,

ORDER
PAGE - 3

pursuant to 12 C.F.R. §1024.17(i). Plaintiff believes he has never received an escrow analysis from Nationstar.

18. In the process of servicing the Loan, Nationstar has imposed certain property inspection and property preservation fees onto the Loan. In his full time occupancy of the Property during the relevant time period, Plaintiff believes he has never witnessed any event of property inspection or property preservation. Plaintiff believes he was never given any notice that such services were occurring or that the fees for such services would be paid by Nationstar and then charged to the Loan. When Plaintiff asked for documentation in support of the necessity for such services and Nationstar's proof of payments for such services, Nationstar has been nonresponsive.

. . .

20. Upon information and belief, in the process of servicing the Loan, Nationstar has imposed force-placed insurance or Lender Placed Insurance ("LPI") upon the Property without prior notice to Plaintiff. Nationstar's imposition of LPI, which is much more expensive than hazard insurance that a borrower can obtain on his own, is a regular business practice of Nationstar. On information and belief, Nationstar utilizes Assurant Inc., as the LPI insurance company. Nationstar and Assurant were sued and agreed to pay $54 million in settlement to borrowers who have been harmed by the companies' force-placed inflated premiums on their properties.

21. In the process of servicing the Loan, Nationstar has imposed approximately $6,795.27 in "Legal Fees" even though there has been no action or proceeding, including bankruptcy proceeding, implicating or affecting the Property as collateral for the Loan. The imposition of Legal Fees is unjustified and unwarranted as Nationstar had never informed Plaintiff of any "legal" proceeding involving the Loan or the Property.

22. QLS and Nationstar have provided Plaintiff with certain "Payoff Quote" and Periodic Statements that represent inconsistent numbers which prevents Plaintiff from knowing the true balance of what is due and owing on the Loan in order to (1) payoff the Loan, or (2) exercise his loss mitigation options.

23. QLS issued a Payoff Quote dated August 10, 2017, announcing that it would require $907,881.78 to pay off the Loan. Nationstar issued a Periodic Statement dated August 16, 2017, representing a total payoff of $924,160.00 (Interest Bearing Principal Balance $571,345.15 plus Total Amount Due $352,814.85) (Exhibit E, Comparison of Payoff Quote and Periodic Statement of 08/16/2017). There are discrepancies between the itemized amounts in the Payoff Quote and August Periodic Statement. **In between the time that QLS issued the Payoff Quote, and Nationstar issued the**

**August Periodic Statement – a mere eight days – the amount required to cure or to pay off the Loan increased by approximately $16,278.22.**

24. Within the Periodic Statements dated July and August of 2017, Nationstar has charged Plaintiff "Legal Fees" in the total amount of $6,795.27 even though no "legal" event has occurred, and fees related to nonjudicial foreclosure had already been charged by Nationstar. Meanwhile, the Payoff Quote issued by QLS in August of 2017 omits such substantial amount for Legal Fees (Exhibit F, Payoff Quote compared to Periodic Statements dated July and August of 2017).

25. Being unable to understand the defendants' blatant inaccurate accounting, Plaintiff issued a Request for Information ("RFI") and Notice of Error ("NOE") to Nationstar, pursuant to Regulation X, RESPA, dated August 11, 2017, inquiring specifically about any property inspection or property preservation that Nationstar had imposed on the Loan. In the RFI and NOE, Plaintiff specifically referenced the Periodic Statement sent by Nationstar which represents $923.50 in property inspection or preservation fees and requested the invoices backing the charges.

26. In the same RFI and NOE, Plaintiff requested invoices supporting Nationstar's imposition of fees relating to a "prior foreclosure sale." Nationstar has failed to response to Plaintiff's RFI or NOE (Exhibit G, RFI, NOE sent by Diffley).

27. Being extremely worried about the impending nonjudicial foreclosure, and the various impermissible and suspect fees and charges, Plaintiff was compelled to hire the undersigned law firm to assist him. On August 25, 2017, plaintiff counsel wrote to Nationstar advising legal representation and requesting the "Opportunity to Meet and Confer" pursuant to the Washington Foreclosure Fairness Act (Exhibit H, Barraza Letter 08/25/2017). Even though Nationstar has set a nonjudicial foreclosure sale date of September 29, 2017, Nationstar refused to grant Plaintiff's request to meet and confer.

28. On September 1, 2017, staff from plaintiff counsel's office contacted Nationstar to inquire about the reason(s) for the Legal Fees imposed and was told that this was an "old item" and that Nationstar had taken the fees and depleted the Loan's "suspense account." Given these various discrepancies, Plaintiff, through his counsel, asked Nationstar to postpone the nonjudicial foreclosure sale for further investigation. Nationstar's employee, Sandra, #956694, responded that Nationstar is not willing to do so.

29. Plaintiff submitted yet another application for assistance from Nationstar to keep his home. He received confirmation that Nationstar received his Request for Mortgage Assistance via fax (Exhibit I, Fax Confirmation of RMA).

30. Plaintiff counsel issued to Nationstar and QLS a letter via email detailing the discrepancies in the amount to cure the default and to reinstate the Loan and urging both defendants to continue the nonjudicial foreclosure sale for further investigation (Exhibit J, Barraza Letter dated September 5, 2017).

31. For the past years, Plaintiff has made dozens of calls to Nationstar's customer service line in order to get a handle on his Loan Account. Plaintiff has spent hours composing letters and requests and compiling supporting documents for these letters and requests to be sent to Nationstar in his relentless effort to obtain a full accounting of the Loan and to correct the errors committed by Nationstar to no avail. Despite his numerous attempts including the most recent contact with Nationstar through his counsel, Nationstar continues to ignore Plaintiff's requests and maintains that it is still trying to get a hold of Plaintiff for purpose of loss mitigation.

32. The amount of time that has taken Plaintiff to obtain a full accounting of the Loan is time that Plaintiff could have and would have devoted to his business whereupon he would earn a good income. The experience Plaintiff has with Nationstar has rendered him angry, frustrated, and despondent. Plaintiff has developed certain physical ailments or adverse conditions which coincide with the contacts he has made with Nationstar concerning his Loan account and his effort to obtain a loan modification.

33. Plaintiff has incurred expenses in trying to get Nationstar to respond to his requests concerning his Loan Account Status and Application for Loss Mitigation. These include office supply, copy and fax charges, delivery and mailing costs, mileage and parking. Plaintiff has also incurred attorney fees as he needed to consult with one or more lawyers about the Loan and what Nationstar has done.

34. Upon information and belief, in onboarding the Loan, Nationstar put the Loan and Plaintiff's information into its electronic database or system of record without verifying the accuracy of the information as maintained by the prior servicer whatsoever. By Nationstar's admission, the company charged the Loan with "old items" which were maintained in a non-existent suspense account. Thus, it is clear that where the data transferred by SLS has errors or inaccuracies, Nationstar has imported the errors or inaccuracies into its system without verifying or correcting them.

35. Acting in the capacity of an agent of Nationstar, and having access to the Loan's status, QLS has actual or constructive knowledge of Plaintiff's Loan based on numerous attempts he has made to ascertain the payoff information, to correct the inconsistencies in the numbers represented by Nationstar and QLS, and his continuing effort to seek loss mitigation. The fact that QLS issued the Payoff Quote and other figures to Plaintiff that are inconsistent

with what Nationstar has conveyed in the same time period, including the omission of $6,795.27 in Legal Fees, is evidence that QLS does not conduct even the most cursory task of verifying and updating the amount that Plaintiff needs to reinstate the Loan and prevent the foreclosure sale of his home.

36. Even though QLS has actual or constructive knowledge of Plaintiff's efforts to obtain loss mitigation, it continues to advance the nonjudicial foreclosure. The process by which Nationstar and QLS pursue foreclosure while pretending to engage in loss mitigation is known as "dual-tracking." Dual-tracking is specifically prohibited under the Dodd-Frank Amendment as well as under the laws of several states. QLS' failure to verify and update payoff information or reinstatement amount before conveying such information to consumers, and QLS' participation in dual-tracking, is a pattern or business practice, meaning that other consumers have been harmed, or potentially will be harmed, in the same manner that QLS has harmed Plaintiff in this case.

Dkt. #1 at ¶¶ 10-36 (citations omitted; bold in original).

Plaintiff now brings claims against Defendant Nationstar for violations of RESPA and Regulation X, violations of the FDCPA, violations of Washington's CPA, breach of the Deed of Trust, and negligence (Counts One through Seven); against Defendant Wells Fargo for breach of Deed of Trust and negligence (Counts Six and Nine); and against Defendant QLS for negligence and violations of Washington's CPA (Counts Eight and Ten). Dkt. #1 at ¶¶ 37-94. The instant motions followed.

### III. DISCUSSION

#### A. Standard of Review

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiffs' claims must be dismissed. *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the complaint, the Court may consider documents for which it has taken judicial notice. *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Here, the Court has taken judicial notice of and considers herein the documents attached to the Declaration of Michael Kapain in support of Defendants' Motion to Dismiss. *See* Dkt. #12, Exs. 1-3. The Court agrees that judicial notice is appropriate because the documents presented are matters of public record, having been filed in the King County Recorder's Office. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Likewise, the Court considers those documents attached to the Complaint and incorporated by reference therein.[1] *Parrino v. FHP, Inc.*, 146 F.3d 669, 707 (9th Cir. 1998).

**B. Plaintiff's Complaint**

*1. Counts One and Two*

In Counts One and Two, Plaintiff alleges that Defendant Nationstar violated RESPA and Regulation X in a number of ways. Dkt. #1 at ¶ ¶ 37-50. Specifically, Plaintiff alleges that Nationstar committed such violations by: 1) "onboarding" data about his Loan from the prior servicer without verifying its accuracy or completeness (*id.* at ¶ 38); 2) changing the monthly

---

[1] Defendants note that Plaintiff's Complaint contains incorrect references to the Exhibits attached thereto. *See* Dkt. #11 at 8 fn. 4. In his Response, Plaintiff states, "Attached to this Response are the Exhibits to the Complaint, corrected to references and citations made in the Complaint." Dkt. #17 at 3 fn. 1. However, no exhibits were attached to the Response at the time of filing, nor were they filed thereafter. Accordingly, the Court considers those exhibits attached to the Complaint inasmuch as the Court can determine the proper references.

ORDER
PAGE - 8

payment upon service transfer but failing to provide Plaintiff with an initial escrow account statement within 60 days of the date of servicing transfer (Dkt. #1 at ¶ 41); 3) failing to conduct an annual escrow analysis for Plaintiff at the completion of the escrow account computation year to determine his monthly escrow account payments for the next computation year and failing to provide him with an annual escrow account statement within 30 days of the completion of the escrow account computation year (*id.* at ¶ ¶ 42-43); 4) refusing to provide Plaintiff with information about his Loan and to correct the identified errors having to do with property preservation and property inspection (*id.* at ¶ 44); 5) refusing to provide Plaintiff with information as requested regarding property inspection and property preservation (*id.* at ¶ 45); 6) failing to explain and document payments regarding Legal Fees as requested (*id.* at ¶ 46); 7) failing to provide Plaintiff with written notice by mail concerning Nationstar's imposition of Lender Placed Insurance (*id.* at ¶ 47); 8) failing to respond to Plaintiff's Notice of Error ("NOE") dated August 11, 2017 (*id.* at ¶ 49); and 9) failing to respond to Plaintiff's Request for Information ("RFI") dated August 11, 2017 (*id.* at ¶ 50).

Defendants argue that none of these alleged actions violated RESPA. Dkt. #11 at 6-10. As an initial matter, Defendants argue that RESPA exempts escrow statements for loans that are in default. *Id.* at 7. Defendants point to 24 C.F.R. § 1024.17(i), which exempts loan services from providing annual escrow analyses if the account is more than 30 days overdue. The documents submitted by Plaintiff with his Complaint, demonstrate that his loan had been in default for nearly four years prior to the transfer of his loan. Dkt. #1, Exs. A, E and F. Thus, to the extent that Plaintiff's Count One alleges a violation for failure to conduct annual escrow analyses, Dkt. #1 at ¶ ¶ 42-43), those allegations are dismissed with prejudice.

ORDER
PAGE - 9

Likewise, the Court dismisses with prejudice Count One to the extent that Plaintiff alleges the failure to provide written notice of the imposition of Lender Placed Insurance. Dkt. #1 at ¶ 45. Plaintiff attached as Exhibit K to his Complaint, the applicable Deed of Trust. That Deed explicitly allows the Lender to obtain insurance coverage at the Borrower's expense if the Borrower fails to maintain insurance coverage as required. Dkt. #1, Ex. K at *Uniform Covenants*, ¶ 5. Nothing in that section requires written notice to Plaintiff, and Plaintiff fails to cite any specific provision to the contrary.

Defendants next argue the Plaintiff's claims fail because they are untimely. Dkt. #11 at 8. Claims for violations of RESPA are subject to a three-year statute of limitations. 12 U.S.C. § 2614. Plaintiff alleges that Defendant Nationstar became liable for the alleged violations as of January 10, 2014. Dkt. #1 at ¶ 42. Plaintiff did not commence the instant action until September 11, 2017, more than three years after that date. Thus, to the extent Plaintiff makes claims based on actions taken prior to September 11, 2014, those claims are dismissed as time barred.

However, Plaintiff alleges claims that Defendant Nationstar violated RESPA because it boarded loan information from the prior servicer without verifying its accuracy and by failing to respond to requests for information occurring on an ongoing basis. Defendants do not address these allegations. Accordingly, Count One will not be dismissed in its entirety at this time.

With respect to Count Two, which alleges violations for failing to respond to an NOE and RFI mailed on August 11, 2017, the Court agrees with Defendants that such claims were premature at the time the Complaint was filed. See Dkt. #11 at 9-10. Therefore, Count Two will be dismissed with leave to amend as allowed below.

///

///

ORDER
PAGE - 10

2. *Counts Three and Four*

In Counts Three and Four, Plaintiff alleges that Defendant Nationstar violated the FDCPA for the same reasons set forth in Counts One and Two. Dkt. #1 at ¶¶ 51-60. Defendant Nationstar asserts that these Counts should be dismissed because it is not a debt collection as defined under the FDCPA and because foreclosure is not a debt collection subject to the FDCPA. Dkt. #11 at 10-11. In other words, Defendant argues that it is a creditor rather than a debt collector. Defendant relies on the discussion in the recent United States Supreme Court decision *Henson v. Satander Consumer USA Inc.*, 137 S. Ct. 1718, 198 L. Ed.2d 177 (June 12, 2017), wherein the Supreme Court noted:

> while the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default. After all and again, under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector. And petitioners' argument simply does not fully confront this plain and implacable textual prerequisite. Likewise, even spotting (without granting) the premise that a person cannot be both a creditor and a debt collector with respect to a particular debt, we don't see why a defaulted debt purchaser like Santander couldn't qualify as a creditor. For while the creditor definition excludes persons who "receive an assignment or transfer of a debt in default," it does so only (and yet again) when the debt is assigned or transferred "*solely* for the purpose of facilitating collection of such debt *for another*." *Ibid.* (emphasis added). So a company collecting purchased defaulted debt for its own account – like Santander – would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.

*Henson*, 137 S. Ct. at 1724 (emphasis in original).

Plaintiff relies on the Washington State case of *Walker v. Quality Loan Serv. Of Washington*, 176 Wn. App. 294, 308 P.3d 716 (Div. 1 2013), and the Sixth Circuit case of *Bridge v. Ocwen, FSB*, 681 F.3d 355 (6th Cir. 2012), in support of his argument that Defendant Nationstar is indeed a debt collector. Dkt. #17 at 6. Neither of these cases is persuasive. First, in *Walker*, the Washington State Court of Appeals recognized that the FDCPA "applies only to 'debt

ORDER
PAGE - 11

collectors,' <u>which are entities who regularly collect debts for others</u>, not to 'creditors,' who are collecting on their own behalf." *Walker*, 308 P.3d at 724 (emphasis added). The *Walker* court also relied on prior Ninth Circuit case law when concluding that a loan servicer could become a debt collector if the loan was in default when it was purchased. *Id.* at 316-17. However, with respect to that reasoning, as well as that in *Bridge*, the United States Supreme Court in *Henson*, *supra*, subsequently resolved any split in the Circuits, explaining that a company collecting purchased defaulted debt for its own account could be a creditor rather than a debt collector. Accordingly, for the reasons set forth by Defendants, the Court agrees that Defendant Nationstar is not a "debt collector" as defined by the FDCPA, and therefore Plaintiff's Counts Three and Four must be dismissed with prejudice.

    3. *Count Five*

In Count Five of his Complaint, Plaintiff alleges that Defendant Nationstar has violated Washington's CPA. Dkt. #1 at ¶¶ 61-66. Defendant asserts that this Count should be dismissed because the vague statements contained in that Count do not allege sufficient facts to meet the elements of a CPA claim. Dkt. #11 at 11-14. The Court agrees. In response to the motion, Plaintiff argues a laundry list of alleged violations to support his claim. Dkt. #17 at 7. However, none of those allegations are contained in his Count Five. *Compare* Dkt. #1 at ¶¶ 61-66 *with* Dkt. #17 at 7, lns. 10-18. In fact, Plaintiff does not even recognize that his allegations are not contained in Count Five. Instead, he asserts arguments regarding Count 4, which is contrary to the document he filed. *See* Dkt. #17 at 7, lns. 5-10. Accordingly, the Court will dismiss Count Five with leave to amend, as allowed below.

///

///

*4. Count Six*

In Count Six of his Complaint, Plaintiff alleges that Defendants Wells Fargo and Nationstar breached the Deed of Trust by imposing certain legal fees on him. Dkt. #1 at ¶¶ 67-72. Defendants assert that this Count must be dismissed because the Deed of Trust specifically allows for the imposition of such fees. Dkt. #11 at 14-15. The Court agrees.

Paragraph 9 of the DOT states "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument… then Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest" in the Property and such expenses become additional debt under the Loan. Plaintiff ignores section (a). Commencing the nonjudicial foreclosure and the costs thereof are reasonable and appropriate to protect Lender's interest which are authorized in the DOT when, as here, the Borrower fails to pay the Loan. Dkt. #1, Ex. K at *Uniform Covenants*, ¶ 9. Plaintiff argues that this Court has rejected Defendants' arguments, relying on *Lucero v. Cenlar, FSB*, 2016 U.S. Dist. 10430 (W.D. Wash. Oct. 4, 2013). However, as Defendants note, Plaintiff's reliance on that case is misplaced, given that it was addressing attorney's fees incurred in litigation, which are not the same fees assessed here. *See* Dkt. #20 at 7-8. Accordingly, Count Six is dismissed with prejudice.

*5. Counts Seven and Nine*

In Counts Seven and Nine of his Complaint, Plaintiff pleads Washington State common law claims for negligence against Defendants Nationstar and Wells Fargo. Dkt. #1 at ¶¶ 73-77 and 82-83. Defendants argue that these claims should be dismissed because they are untimely and because Plaintiff has failed to plead sufficient facts to support the elements of a negligence claims. Dkt. #11 at 15-17.

As an initial matter, the Court agrees that the majority of Plaintiff's claims are untimely. In Washington, a cause of action for negligence is subject to a three-year statute of limitations. RCW 4.16.080(2). Plaintiff alleges that Defendants acted negligently when it "onboarded" Plaintiff's loan information. Dkt. #1 at ¶¶ 74 and 83. As noted above, that act occurred more than three years prior to the filing of the Complaint. Thus, those portions of Counts Seven and Nine are dismissed with prejudice. Plaintiff further asserts that Defendants acted negligently by failing to perform an escrow analysis as required by RESPA. Dkt. #1 at ¶¶ 75 and 83. As also noted above, such analysis was not required. Therefore, these portions of Counts Seven and Nine are also dismissed with prejudice. Finally, to the extent that Plaintiff complains about any fees or charges assessed prior to January 2014, any negligence claim would be time barred.

To the extent that Plaintiff has intended to plead other allegations of negligence occurring "within the past two years," and specifically that Defendants breached a duty to negotiate or process a loan modification, Dkt. #17 at 10, such allegations are not contained in his Complaint. *See* Dkt #1 at ¶¶ 73-77. Thus, Plaintiff's Counts Seven and Nine are dismissed in their entirety, subject to amendment.

6. Count Eight

In Count Eight of his Complaint, Plaintiff alleges a Washington State common law claim of negligence against Defendant QLS. Dkt. #1 at ¶¶ 78-81. Rather than address the negligence claim, QLS responds that there is no independent cause of action under the Deed of Trust Act. Dkt. #13 at 2. Because that argument does not apply to the claim in Count Eight, the Court will not dismiss the claim.[2]

---

[2] To the extent that QLS attempts to address negligence in its Reply brief, Dkt. #21 at 1-2, the Court will not address such claims as they were raised for the first time on reply. *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments . . . presented for the first time in Reply are waived.").

ORDER
PAGE - 14

### 7. *Count Ten*

Finally, in Count Ten of his Complaint, Plaintiff alleges a claim for violation of Washington's CPA against Defendant QLS. Dkt. #1 at ¶¶ 84-94. Plaintiff alleges that QLS has violated the CPA by failing to identify the Holder of the Note or the Person Entitled to Enforce, or the Beneficiary, and instead used a form Notice of Default that violates Washington law. *Id.* at ¶¶ 84-88. Plaintiff further alleges that QLS has violated the CPA by failing to verify the loan information and by engaging in "dual tracking." Dkt. #1 at ¶¶ 90-92. Again, QLS failed to respond to the allegations made by Plaintiff. Instead, QLS argues that technical violations of the DTA do not constitute deceptive acts under the CPA. Dkt. #13 at 2-3. Because that argument does not address the actual allegations raised in Count Ten, the Court will not dismiss the claim.[3]

### C. Leave to Amend

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court has identified numerous deficiencies for which it has dismissed Plaintiff's claims. However, given that some of Plaintiff's arguments in response to the instant motion appear to differ from those claims set forth in the Complaint, Plaintiff shall have the opportunity to correct those deficiencies should he believe he can do so, through the filing of an Amended Complaint as directed below.

---

[3] Again, the Court will not address arguments raised for the first time on reply. *See* Dkt. #21 at 3-4.

ORDER
PAGE - 15

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants Wells Fargo and Nationstar's Motion to Dismiss (Dkt. #11) is GRANTED IN PART as discussed above.

2) Defendant QLS's Joinder in the Motion to Dismiss (Dkt. #13) is DENIED.

3) Plaintiff may file an Amended Complaint **no later than fourteen (14) days from the date of this Order**. Should Plaintiff choose to file such a complaint, Plaintiff shall omit all Counts and/or allegations that have been dismissed with prejudice as noted above. Should Plaintiff choose not to file such a complaint, this case will be closed.

4) Nothing in this Order precludes Defendants from moving to dismiss any Amended Complaint should they believe such action is warranted and legally supported.

DATED this 6th day of December 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE