UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRETT DIFFELY, | Case No. C17-1370 RSM |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART NATIONSTAR AND WELLSFARGO'S MOTION TO DISMISS |
| v. | |
| NATIONSTAR MORTGAGE, LLC, *et al.*, | |
| Defendants. | |

## I.  INTRODUCTION

This matter comes before the Court on Defendants' Nationstar Mortgage, LLC ("Nationstar") and Wells Fargo Bank, N.A. ("Wells Fargo") Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. #24.  Defendants seek dismissal of all claims against them with prejudice with respect to alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), Washington State's Consumer Protection Act ("CPA"), and negligence under Washington State law.  *Id.* Plaintiff opposes the motion.  Dkt. #26.  For reasons discussed herein, this Court GRANTS IN PART and DENIES IN PART Defendants' motion.

/ / /

/ / /

ORDER  - 1

## II.    BACKGROUND

On September 11, 2017, Plaintiff filed a ten-count Complaint against Defendants Nationstar, Wells Fargo, and Quality Loan Service ("QLS"). Dkt. #1. On October 16, 2017, Defendants Nationstar and Wells Fargo filed a Motion to Dismiss. Dkt. #11. On October 27, 2017, Defendant QLS joined that Motion.

On December 6, 2017, this Court issued an Order, granting in part and denying in part Defendants Nationstar and Wells Fargo's Motion to Dismiss; denying QLS's Motion; and granting Plaintiff leave to amend his Complaint. Dkt. #22. Specifically, the Court dismissed in part Count 1, dismissed Counts 2, 5, 7, and 9 with leave to amend, and dismissed Counts 3, 4, and 6, with prejudice. Dkt. #22.

On December 20, 2017, Plaintiff filed a First Amended Complaint ("FAC"). Dkt. #23. Plaintiff alleges the following factual background to his amended claims:

> 10. The Loan was originated by First Independent Mortgage Company, which is now defunct. It was serviced by BAC Home Loans, Bank of America, and then Specialized Loan Servicing ("SLS"). As of the present, the servicing of the Loan is with Nationstar. The Loan is a subprime, high interest, adjustable rate loan.
>
> 11. Acting as agent of Nationstar, QLS issued a Notice of Default to Plaintiff by posting it at the Property and mailing it via certified mail ("Second NOD") (Exhibit A, NOD issued by QLS). In this document, Nationstar declared that Wells Fargo, acting as trustee, is "the owner of the Note secured by the Deed of Trust." However, QLS failed to furnish Plaintiff with a copy of the signed Note or the Deed of Trust referenced in the Second NOD. Other than the naked disclosure by Nationstar and QLS regarding the ownership of the Note, none of the named defendants has provided any documentary support that Plaintiff's Loan was in fact included in the Identified Securitized Trust, or that the Identified Securitized Trust actually owns the Note, or that Wells Fargo, or Nationstar, is the holder of the Note, or that Wells Fargo is the beneficiary under the Deed of Trust that Plaintiff executed at closing.

12. In fact, when Bank of America serviced the Loan in 2009, its foreclosing agent, Recontrust Company, previously issued another Notice of Default to Plaintiff ("First NOD"). Said Notice of Default made no mentioned of Wells Fargo or the Identified Securitized Trust's involvement. Rather, Plaintiff was informed by Bank of America/ReconTrust that "The creditor to whom the debt is owed: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." The serial loan servicers and inconsistent representations about who the lender, creditor, owner, and the lack of disclosure of who the note holder is all contribute to Plaintiff's feeling of frustration and insecurity about the entity he must talk to rein in his mortgage Loan (Exhibit B, First NOD).

13. In actuality, Plaintiff had no dealing whatsoever with either Wells Fargo, as trustee of the Identified Securitized Trust, the Identified Securitized Trust itself, or Mortgage Electronic Registration Systems, Inc. ("MERS"). He had never received a single phone call or written communication from any of these entities. To the best of his knowledge, the monies used to fund the Loan at closing did not come from Wells Fargo, MERS, the Identified Securitized Trust, or Nationstar.

14. For several years, Plaintiff tried desperately to obtain a loan modification with the prior loan servicer, Bank of America and Specialized Loan Servicing, to no avail. After Nationstar allegedly took over the servicing of the Loan, Plaintiff continued to seek a loan modification. All in all, Plaintiff has submitted approximately ten (10) application packages for loss mitigation, each time investing days gathering and updating financial information and documentation, and paying the costs for mailing, faxing, and shipping the information overnight.

15. Nationstar, like the previous servicers, continues to solicit Plaintiff to apply for loan modification and other loss mitigation options (Exhibit C, Composite of Nationstar's letters to Plaintiff regarding loss mitigation). Nationstar told Plaintiff that it has a "Foreclosure Prevention Department," dedicated to help struggling homeowners like Plaintiff. Nationstar uses impassioned language in its written inducement for Plaintiff to engage in loss mitigation including, including phrases like "To keep your account up to date, it would be very helpful if we could talk and explore your options," "We know the importance of homeownership and appreciate the opportunity to help you." In July of 2017, Plaintiff was informed in writing that Nationstar has "partnered" with Urban League of Metropolitan Seattle to help Plaintiff "find solutions that could help avoid foreclosure, stay in your home, and continue to enjoy the benefits of homeownership."

16. Ironically, during the same period of time during which Plaintiff actively responded to the described written solicitation and sought assistance from Nationstar to keep his home, Nationstar instructed QLS to advance nonjudicial foreclosure against him and the Property. To foreclose, QLS utilized a Foreclosure Loss Mitigation Form/Declaration Pursuant to RCW 61.24.031. In this document, Nationstar's Document Execution Specialist Chane Davis certifies under penalty of perjury that Nationstar "has exercised due diligence to contact the borrower as required in RCW 61.24.031(5) and the borrower did not respond." (Exhibit D, Foreclosure Loss Mitigation Form). Nationstar's Declaration is simply not true in that Plaintiff has never stopped trying to obtain loss mitigation, regardless of who the loan servicer is.

17. In the process of servicing the Loan, Nationstar has imposed certain property inspection and property preservation fees onto the Loan. In his full-time occupancy of the Property during the relevant time period, Plaintiff had never witnessed any event of property inspection or property preservation. He was never given any notice that such services were occurring or that the fees for such services would be paid by Nationstar and then charged to the Loan. When Plaintiff asked for documentation in support of the necessity for such services and Nationstar's proof of payments for such services, Nationstar has been nonresponsive.

18. Nationstar's practice of imposing property inspection and property preservation upon properties which are occupied by consumers has been called into question in a class action lawsuit in Washington.2 Property inspection and preservation is the code word for Nationstar's invasion of homes which are continued to be occupied by consumers in violation of law is a pattern or business practice of Nationstar carried out in the State of Washington and beyond.

19. In the process of servicing the Loan, Nationstar has imposed approximately $6,795.27 in "Legal Fees" without any explanations for how and when these legal fees were incurred. When Plaintiff inquired about the nature, extent, and invoices for the legal fees incurred, Nationstar refused to respond to his specific inquiry.

20. QLS and Nationstar have provided Plaintiff with certain "Payoff Quote" and Periodic Statements that represent inconsistent numbers which prevents Plaintiff from knowing the true balance of what is due and owing on the Loan in order to (1) payoff the Loan, or (2) exercise his loss mitigation options.

21. QLS issued a Payoff Quote dated August 10, 2017, announcing that it would require $907,881.78 to pay off the Loan. Nationstar issued a Periodic Statement dated August 18, 2017, representing a total payoff of $924,160.00 (Interest Bearing Principal Balance $571,345.15 plus Total Amount Due $352,814.85) (Exhibit E, Comparison of QLS Payoff dated August 10, 2017, Nationstar Mortgage Loan Periodic Statement dated August 18, 2017, and Nationstar Mortgage Payoff Statement dated August 18, 2017). There are discrepancies between the itemized amounts in the Payoff Quote and August Periodic Statement. **In between the time that QLS issued the Payoff Quote, and Nationstar issued the August Periodic Statement—a mere eight days—the amount required to cure or to pay off the Loan increased by approximately $16,278.22.**

22. Within the Periodic Statements dated July and August of 2017, Nationstar has charged Plaintiff "Legal Fees" in the total amount of $6,795.27 even though no "legal" event has occurred, and fees related to nonjudicial foreclosure had already been included in the total amount due and owing by Nationstar. Meanwhile, the Payoff Quote issued by QLS in August of 2017 omits this substantial amount for Legal Fees (Exhibit F, Comparison of QLS Payoff Quote dated August 10, 2017, Nationstar Mortgage Loan Periodic Statement dated July 18, 2017, Nationstar Mortgage Loan Periodic Statement dated August 18, 2017, and Nationstar Mortgage Payoff Statement dated August 18, 2017).

23. Being unable to understand the defendants' blatant inaccurate accounting, Plaintiff issued a Request for Information ("RFI") and Notice of Error ("NOE") to Nationstar, pursuant to Regulation X, RESPA, dated August 11, 2017, inquiring specifically about any property inspection or property preservation that Nationstar had imposed on the Loan. In the RFI and NOE, Plaintiff specifically referenced the Periodic Statement sent by Nationstar which represents $923.50 in property inspection or preservation fees and requested the invoices backing the charges. Not until September 13, 2017, did Plaintiff receive a response from Nationstar, which is dated for August 21, 2017. The response however declines to provide Plaintiff with the specific information requested, stating "Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided."

24. In the same RFI and NOE, Plaintiff requested invoices supporting Nationstar's imposition of fees relating to a "prior foreclosure sale."

Nationstar has refused to provide the information that Plaintiff specifically requested (Exhibit G, RFI, NOE sent by Diffley).

25. Being extremely worried about the impending nonjudicial foreclosure, and the various impermissible and suspect fees and charges, Plaintiff was compelled to hire the undersigned law firm to assist him. On August 25, 2017, plaintiff counsel wrote to Nationstar advising legal representation and requesting the "Opportunity to Meet and Confer" pursuant to the Washington Foreclosure Fairness Act (Exhibit H, Barraza Letter 08/25/2017). Even though Nationstar has set a nonjudicial foreclosure sale date of September 29, 2017, Nationstar refused to grant Plaintiff's request to meet and confer.

26. On September 1, 2017, staff from plaintiff counsel's office contacted Nationstar to inquire about the reason(s) for the Legal Fees imposed and was told that this was an "old item" and that Nationstar had taken the fees and depleted the Loan's "suspense account." Given these various discrepancies, Plaintiff, through his counsel, asked Nationstar to postpone the nonjudicial foreclosure sale for further investigation. Nationstar's employee, Sandra, #956694, responded that Nationstar is not willing to do so.

27. Plaintiff submitted yet another application for assistance from Nationstar to keep his home. He received confirmation that Nationstar received his Request for Mortgage Assistance via fax (Exhibit I, Fax Confirmation of RMA).

28. Plaintiff counsel issued to Nationstar and QLS a letter via email detailing the discrepancies in the amount to cure the default and to reinstate the Loan and urging both defendants to continue the nonjudicial foreclosure sale for further investigation (Exhibit J, Barraza Letter dated September 5, 2017).

29. Within the years of 2016 and 2017, Plaintiff made dozens of calls to Nationstar's customer service line in order to get a handle on his Loan Account. Plaintiff has spent hours composing letters and requests and compiling supporting documents for these letters and requests to be sent to Nationstar in his relentless effort to obtain a full accounting of the Loan and to correct the errors committed by Nationstar to no avail. Despite his numerous attempts including the most recent contact with Nationstar through his counsel, Nationstar continues to ignore Plaintiff's requests and maintains that it is still trying to get a hold of Plaintiff for purpose of loss mitigation.

30. The amount of time that has taken Plaintiff to obtain a full accounting of the Loan is time that Plaintiff could have and would have

devoted to his business whereupon he would earn a good income. The experience Plaintiff has with Nationstar has rendered him angry, frustrated, and despondent. Plaintiff has developed certain physical ailments or adverse conditions which coincide with the contacts he has made with Nationstar concerning his Loan account and his effort to obtain a loan modification.

31. Plaintiff has incurred expenses in trying to get Nationstar to respond to his requests concerning his Loan Account Status and Application for Loss Mitigation. These include office supply, copy and fax charges, delivery and mailing costs, mileage and parking. Plaintiff has also incurred attorney fees as he needed to consult with one or more lawyers about the Loan and what Nationstar has done.

32. Upon information and belief, in onboarding the Loan, Nationstar put the Loan and Plaintiff's information into its electronic database or system of record without verifying the accuracy of the information as maintained by the prior servicer whatsoever. By Nationstar's admission, the company charged the Loan with "old items" which were maintained in a non-existent suspense account. Thus, it is clear that where the data transferred by SLS has errors or inaccuracies, Nationstar has imported the errors or inaccuracies into its system without verifying or correcting them.

33. Acting in the capacity of an agent of Nationstar, and having access to the Loan's status, QLS has actual or constructive knowledge of Plaintiff's Loan based on numerous attempts he has made to ascertain the payoff information, to correct the inconsistencies in the numbers represented by Nationstar and QLS, and his continuing effort to seek loss mitigation. The fact that QLS issued the Payoff Quote and other figures to Plaintiff that are inconsistent with what Nationstar has conveyed in the same time period, including the omission of $6,795.27 in Legal Fees, is evidence that QLS does not conduct even the most cursory task of verifying and updating the amount that Plaintiff needs to reinstate the Loan and prevent the foreclosure sale of his home.

34. Even though QLS has actual or constructive knowledge of Plaintiff's efforts to obtain loss mitigation, it continues to advance the nonjudicial foreclosure. The process by which Nationstar and QLS pursue foreclosure while pretending to engage in loss mitigation is known as "dual-tracking." Dual-tracking is specifically prohibited under the Dodd-Frank Amendment as well as under the laws of several states. QLS' failure to verify and update payoff information or reinstatement amount before conveying such information to consumers, and QLS' participation in dual-tracking, is a pattern or business practice, meaning that other consumers have been harmed, or

> potentially will be harmed, in the same manner that QLS has harmed
> Plaintiff in this case.

Dkt. #23 at ¶¶ 10-34 (citations omitted; bold in original).

Plaintiff now brings amended claims against Defendants Nationstar and Wells Fargo for violations of RESPA and Regulation X, violations of Washington's CPA, and negligence. Plaintiff also brings a claim against Defendant Wells Fargo for breach of negligence as Principal of Nationstar. Dkt. #23 at ¶¶ 35-74. The instant motion followed.

## III.    DISCUSSION

### A.  Standard of Review

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claims must be dismissed. *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents of which it has taken judicial notice. *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Here, the Court should take judicial notice of and consider herein the documents attached to the Declaration of Michael Kapaun in support of Defendants' Motion to Dismiss. *See* Dkt. #25, Exs. 1-5. The Court

previously found that judicial notice is appropriate because those documents are matters of public record, having been filed in the King County Recorder's Office. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Likewise, this Court should consider the documents attached to Plaintiff's First Amended Complaint and incorporated by reference therein. Dkt. #23, Exs. A-J; *Parrino v. FHP, Inc.*, 146 F.3d 669, 707 (9th Cir. 1998).

**B. Plaintiff's First Amended Complaint**

> *1. Count One: Alleged Violation of the Real Estate Settlement Procedures Act ("RESPA") and Regulation X*

Defendants first move to dismiss Count One of the FAC. In Count One, Plaintiff alleges that Defendant Nationstar violated RESPA and Regulation X in four ways. Dkt. #23 at ¶ ¶ 35-46. Specifically, Plaintiff alleges that Nationstar committed such violations by: 1) refusing both to provide Plaintiff with information about his loan and to correct the identified errors having to do with property preservation and property inspection (*Id.* at ¶ 40); 2) refusing to provide Plaintiff with information as requested regarding property inspection and property preservation (*Id.* at ¶ 41); 3) failing to explain and document payments regarding legal fees as requested (*Id.* at ¶ 42); and 4) failing to provide Plaintiff with a required statement concerning various account charges and failing to respond to a written inquiry regarding an accurate loan pay-off amount (*Id.* at ¶ 43). Defendants argue that Plaintiff's alleged RESPA and Regulation X violations fail because 1) errors during "on-boarding" of the loan and legal fees are time barred, 2) Plaintiff cannot articulate errors for property inspection, 3) Plaintiff admits that Nationstar responded to his requests, and 4) Plaintiff has suffered no damages. *See* Dkt. #24 at 6-10.

First, with respect to Defendants' arguments regarding on-boarding, the Court finds this argument inapplicable. Plaintiff does not appear to allege a violation related to on-boarding. *See* Dkt. #23. Rather, Plaintiff sets forth an allegation for the wrongful on-boarding of information

as background to his claim. *Id.* at ¶ 40. Therefore, Count One is not time barred. Next, with respect to Nationstar's alleged failure to "provide information as requested regarding property inspection and preservation," Defendants do not address these allegations. *See id.* Specifically, Plaintiff argues that "although he has been charged with fees relating to Property Inspection, for all the time that he lives at the property, he had never witnessed any such event," Dkt. #26 at 3, and that "[Nationstar] refused to provide [him] with the invoice or proof of payment." *Id.* at 4. Instead of addressing the alleged failure to "provide information as requested," Defendants argue that Plaintiff cannot articulate an error for fees incurred for inspecting the property because Plaintiff's "Deed of Trust permits the lender to assess fees for protecting lender's interest and adding those fees as additional debt under the Loan." Dkt. #24 at 8. Plaintiff does not allege that the Deed of Trust does not authorize property inspection charges. Rather, he alleges that Defendants have failed to produce the documentation as requested to substantiate Nationstar's charges to his loan. *See* Dkt. #23 at ¶¶ 40-41. Because Defendants have not adequately addressed Plaintiff's allegations, the motion to dismiss is DENIED as to Count One.

2. *Count Two: Alleged Violation of the RESPA and Regulation X*

Next, Defendants move to dismiss Count Two of the FAC. Dkt. #24 at 10. In Count Two, Plaintiff alleges additional violations of RESPA and Regulation X. Specifically, Plaintiff alleges that Defendant Nationstar's responses to his Request for Information ("RFI") and Notice of Error ("NOE") failed to meet the statutory timeline and were substantively inadequate. Dkt. #23 at ¶¶ 43-46 (citing 12 C.F.R. §§ 1024.35 and 1024.36). Plaintiff further alleges that Nationstar refused to provide him with an accurate payoff amount in response to his counsel's letter dated September 5, 2017. *Id.* at ¶ 46. Defendants argue that Count Two is moot because Nationstar timely and substantively responded to Plaintiff's RFI and NOE, Dkt. #24 at 10, that they are not required to

respond to RFIs which request substantially similar information, *id*. at 11, and that Plaintiff has not alleged adequate damages. *Id*. For the following reasons Count Two is dismissed.

### a. Qualified Written Requests

RESPA requires a loan servicer to respond to a Qualified Written Request ("QWR") from a borrower. *See Medrano v. Flagstar Bank, FSB,* 704 F.3d 661, 666 (9th Cir.2012). To constitute a QWR, a borrower's request must: (1) reasonably identify the borrower's name and account, (2) state the borrower's "reasons for the belief ... that the account is in error" or "provide sufficient detail to the servicer regarding other information sought by the borrower," and (3) seek "information relating to the *servicing* of (the) loan." *Id.* at 666-67 (quoting 12 U.S.C. § 2605(e)(1)(B)) (emphasis added). RESPA's provisions relating to loan *servicing* procedures should be "construed liberally" to serve the statute's remedial purpose. *Medrano,* 704 F.3d at 665–66.

> The Ninth Circuit has explained the term "servicing" under RESPA as follows:
>
> ["Servicing"] encompass[es] only "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ..., and making the payments of principal and interest and such other payments." "Servicing," so defined, does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors.

*Id.* at 666–67 (quoting 12 U.S.C. § 2605(i)(3)).

As an initial matter, neither party in this action addresses whether Plaintiff's RFI (*see* Dkt. #23, Ex. G at 15) and NOE (*Id*. at 17) meet the statutory requirements of a QWR. Before determining whether Plaintiff adequately states a claim for relief under Count Two, the Court must first answer the threshold question of whether Plaintiff's request letters constitute a QWR.

The Court finds that both of Plaintiff's August 11, 2017, letters meet *Medrano's* three QWR criteria. 704 F.3d at 666. First, the letters identify Plaintiff's name and account. *See* Dkt. #23, Ex. G at 15. Second, the letters state the reasons Plaintiff believes his account is in error or provides details of the information he seeks. For example, Plaintiff's RFI states, "please provide a copy of the INVOICE[S] evidencing the property inspection charges . . . [and] the invoices evidencing the fees related to the prior foreclosure." *Id.* at 16. Third, the letters seek information relating to the servicing of the loan, not just non-servicing issues, such as loan origination. *Id.*; *See Pendleton v. Wells Fargo Bank, N.A.*, 993 F. Supp. 2d 1150, 1152 (C.D. Cal. 2013) (holding that plaintiff sought servicing information because "she believes there are unnecessary charges to the amount she is required to pay on her loan."). Accordingly, the Court finds that Plaintiff's August RFI and NOE, dated August 11, 2017, are QWRs for purposes of RESPA.

<u>b. Alleged failure to timely respond</u>

Next, with respect to Nationstar's alleged failure to timely respond, the Court finds Nationstar's response to be timely. Plaintiff's NOE and RFI are dated August 11, 2017. Dkt. #23 at ¶ ¶ 45-46. Nationstar's first acknowledgement letter is dated August 21, 2017. *See* Dkt. #25, Ex. 5 at 2. However, Plaintiff alleges he did not receive that letter until September 13, 2017—twenty three-days after his August 11 request. Dkt. #26 at 8. A lender's duty to acknowledge and/or respond within the statutory timeline (five or 30 days) is triggered upon "*receipt*" of a borrower's QWR. *See* 12 U.S.C. § § 2605(e)(1)(A)-(C) (emphasis added). RESPA explicitly states that "If any servicer . . . *receives a QWR* from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response *acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays).* 12 U.S.C. § 2605(e)(1)(A) (emphasis added). Further, "not later than 30 days (excluding legal public

holidays, Saturdays, and Sundays) *after the receipt of a QWR* the servicer shall" provide borrowers with a detailed written communication regarding the loan account and whether any changes were made. *Id.* at (e)(2) (emphasis added). Moreover, the statute does not appear to mandate that a servicer's written communication needs to be *received* by the borrower within the statutory time, but merely that the servicer *respond* to a borrower's QWR within such time. *See Mazzei v. The Money Store*, 552 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) ("defendants' February 2, 2001 letter clearly fulfilled defendants' obligation under RESPA § 2605(e)(1)(A) to acknowledge receipt of plaintiff's letter within twenty days.").

Here, Plaintiff does not allege a date upon which Nationstar *received* his QWRs. Assuming the QWRs were mailed on August 11 (Friday) with a three-day mail delivery period (excluding Sunday), those QWRs would have arrived on August 15 (Tuesday). If August 15 (Tuesday) triggered day one of the five-day response window, Nationstar needed to acknowledge receipt of Plaintiff's QWRs by August 21 (excluding weekends). Because Nationstar's acknowledgement letter is dated August 21, Nationstar provided Plaintiff "a written response acknowledging receipt of the correspondence within 5 days [of receiving a QWR]" 12 U.S.C. § 2605(e)(1)(A). Plaintiff has not provided legal authority to the contrary.

Next, regarding Plaintiff's counsel's letter, dated September 5, 2017, neither party discusses whether that request is a QWR. But for reasons previously discussed, the Court finds that the letter is a QWR under RESPA. *See* Dkt. #23, Ex. J at 28-29. Defendants argue that "the within lawsuit was commenced 6 days later, which would have severed communication between Plaintiff's counsel and Nationstar," Dkt. #24 at 10, and that Defendants are not required to respond to RFIs which request substantially similar information as previously requested. *Id*. at 11.

RESPA does not express that litigation extinguishes a servicer's duty to respond to a borrower's requests, and Defendants have failed to show legal authority to the contrary. *See In re Payne*, 387 B.R. 614, 636 (Bankr. D. Kan. 2008) (holding that a premature lawsuit does not excuse servicer's compliance to respond to borrower's QWR under RESPA). Further, the September 5 letter requested "proof of payment for each of the Escrow and Itemized Fees and Costs . . . in connection with the Loan." Dkt. #23, Ex. J at 29. That letter requested different information than Plaintiff's August 11 RFI and NOE. Thus, the Court finds the September 5 letter is not so substantially similar to Plaintiff's previous requests as to extinguish Nationstar's duty to respond.

<u>c. Alleged failure to substantively respond</u>

Next, with respect to whether Nationstar substantively responded to Plaintiff's requests, RESPA requires servicers to respond to a borrower's QWR in three ways. 12 U.S.C. § § 2605(e)(2)(A)-(C). First, a servicer can make corrections to the account (*Id*. at § (e)(2)(A)); second, a servicer, following an investigation, can explain or clarify why it believes the borrower's account is already correct (*Id*. at § (e)(2)(B)); or third, a servicer can, after an investigation, provide the borrower with a written explanation that includes the information requested and explain why the information not provided cannot be obtained or provided by the servicer (*Id*. at § (e)(2)(C)).

RESPA does not distinguish between a RFI and a NOE—but Regulation X does. *See* 12 CFR § 1024.36 (RFI) and 12 CFR § 1024.35 (Error resolution procedures). Section 1024.36 is analogous to 12 U.S.C. § 2605(e)(2)(C) and Section 1024.35 is analogous to § 2605(e)(2)(B). Here, Plaintiff sent Nationstar two request letters dated August 11, 2017: (1) a "Request for

Information Pursuant to [§] 1024.36 of Regulation X" (*See* Dkt. #23, Ex. G at 15) and (2) a "Notice of Error under 12 CFR [§] 1024.35(b)(5)." *See Id*. at 17.

First, the Court finds that Nationstar conducted an investigation in response to both the RFI and NOE under 12 U.S.C § § 2605(e)(2)(B)-(C). *See* Dkt. #25, Ex. 5 at 8-15 (statements like "according to our records," "furthermore, our records indicate," and "we did not find" are likely investigatory words and Plaintiff does not claim otherwise). Thus, the issue before the Court is whether Plaintiff sufficiently pleaded that Nationstar failed to substantively respond to his RFI and NOE under RESPA. The Court agrees with Plaintiff regarding the RFI and agrees with Nationstar regarding the NOE.

With respect to the RFI, Plaintiff alleged that Nationstar violated RESPA because it failed to provide him "with information [invoices for $923.50] as requested regarding property inspection and property preservation," and by "its failure to explain and document [invoices for $6,795.27] payments regarding legal fees as requested." Dkt. #23 at ¶ ¶ 40-42. However, Plaintiff's RFI does not mention "legal fees." *See* Dkt. #23, Ex. G at 15. Instead, he requested invoices for "property inspection charges and fees related to the prior foreclosure sale." *Id*. at 16. If Plaintiff intended that legal fees were included in fees related to the prior foreclosure sale, he failed to state as such. Even so, although Nationstar explained the reasons why it found Plaintiff's property inspection fees were not erroneously charged (Dkt. #25, Ex. 5 at 10), Nationstar failed to provide Plaintiff with a written "explanation of why his requested [invoice(s) evidencing property inspection charges] were unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C)(i). Moreover, Nationstar stated that "some information you have requested does not pertain directly to the servicing of the loan . . . and/or is considered proprietary and confidential." Dkt. #25, Ex. 5 at 8. But that blanket explanation does not provide Plaintiff with

enough information to determine why his requested invoices or proof of payment cannot be produced. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016) (holding that "if servicers want to try to shelter behind their RESPA response letters, they must provide a more comprehensive, supported explanation of their findings, or else introduce the supporting attachments into the record and convert their motions to dismiss into motions for summary judgment."). Therefore, the Court finds that Plaintiff sufficiently pleaded that Nationstar did not substantively respond to his RFI under § 2605(e)(2)(C)(i).

Next, with respect to the NOE, Plaintiff alleged that Nationstar violated RESPA because it "has continued to refuse to . . . correct the identified errors having to do with property preservation and property inspection." Dkt. #23 at ¶ 40. However, Plaintiff's allegations are contradicted by the documents of which the Court has taken judicial notice; Nationstar's letter to Plaintiff (dated August 28, 2017) outlines that it conducted an investigation of the property inspection fees and explained why it believes Plaintiff's account is correct (citing to Plaintiff's Deed of Trust which allows for inspections). *See* Dkt. #25, Ex. 5 at 10. Thus, this Court finds that Nationstar provided Plaintiff with a written explanation, including a "statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." 12 U.S.C. § 2605(e)(2)(B)(i).

### d. Damages

Finally, with respect to damages under RESPA and Regulation X, Defendants argue that Plaintiff does not allege pecuniary harm arising from the alleged violations. Dkt. #24 at 10. Defendants specifically contend that "the harm alleged elsewhere in the complaint relates to [Plaintiff's] attempts to block the foreclosure, the 'but for' cause of which is the failure to pay [his] mortgage." *Id*. Plaintiff responds that his "damages are directly caused by Nationstar's

failure to comply with [RESPA]." Dkt. #26 at 9 (citing 12 U.S.C. § 2605(f)(1)(A)). Specifically, Plaintiff alleges that "[w]ithin the years of 2016 and 2017, he made dozens of calls to Nationstar's service line and spent hours composing letters/requests and compiling supporting documents," the time Plaintiff has spent on his loan accounting is "time he would have devoted to his business whereupon he would earn a good income," and the experience with Nationstar has rendered him "angry, frustrated, and despondent." Dkt. #23 at ¶¶ 29-30. Further, Plaintiff alleges "office supply expenses, copy and fax charges, delivery and mail costs, mileage, and parking" arising from Nationstar's actions. *Id*. at ¶ 31.

RESPA provides that anyone who violates RESPA shall be liable for damages to an individual who brings an action under the section. *Allen v. United Fin. Mortg. Corp.,* 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); *see* 12 U.S.C. § 2605(f). "[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." *Hutchinson v. Del. Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J.2006). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm." *See Singh v. Wash. Mut. Bank*, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees" (quotation marks and citation omitted)).

Here, Plaintiff's FAC lacks facts or allegations that he suffered pecuniary loss due to Defendants' alleged RESPA violations. Specifically, Plaintiff does not allege that his damages were caused "as a result of [Nationstar's] failure to respond" to his requests. 12 U.S.C. § 2605(f)(1). Instead, he pleaded a laundry list of alleged damages that happened prior to those

requests. Dkt. #23 at ¶ ¶ 29-31. Therefore, the Court finds that Plaintiff's purported damages of "office supply expenses, copy and fax charges, delivery and mail costs, mileage and parking, postage, and other costs" (Dkt. #23 at ¶ 31) are not sufficient to support his claim under RESPA because, as pleaded, they were not actual damages as a result of Nationstar's failure to respond to his requests.

In conclusion, the Court agrees with Plaintiff regarding Nationstar's failure to substantively respond to his RFI and September 5 letter, and it agrees with Defendants regarding a timely response and damages. Accordingly, Count Two is dismissed.

*3. Count Three: Alleged Violation of the Washington Consumer Protection Act ("CPA")*

Next, Defendants move to dismiss Count Three of the FAC. In Count Three, Plaintiff alleges that Nationstar violated Washington's CPA as follows:

> (1) its actions taken in connection with mortgage loan servicing, inter alia, [occur] in trade or commerce (Dkt. #23 at ¶ 49); (2) the use of inaccurate and incomplete information to service Plaintiff's loan is unfair (*Id.*); (3) the imposition of over $6,000 in legal fees (without providing satisfactory explanation of its accrual) is unfair (*Id.*); (4) the imposition of $923.50 in services allegedly performed is unfair (*Id.*); (5) knowingly making false material representations to third-parties is deceptive (*Id.* at ¶ 50); (6) the Dodd-Frank Act is evidence that Nationstar's conduct impacts a public interest (*Id.* at ¶ 51); and (7) Nationstar proximately caused concrete damages to Plaintiff's property and caused him to lose money which [was] spent trying to obtain [an] accurate payoff and reinstatement figures [including] money paid for fuel, office supply, postage and shipping, and money paid for attorney fees.

*See* Dkt. #23 at ¶ 52.

Defendants argue that none of Plaintiff's alleged acts support a CPA claim. *See* Dkt. #24 at 11-14. As an initial matter, Defendants assert that Plaintiff fails to identify an unfair or deceptive act. *Id*. Defendants also argue that Plaintiff's CPA claim fails because he has not sufficiently pleaded injury to his business or property that arose from the acts complained of. *Id.* at 14. Even assuming that Nationstar's alleged acts were unfair or deceptive, occurred in a trade

or business, and affected the public interest, the Court finds that Plaintiff's CPA claim fails because he has not pleaded facts alleging CPA-related damages.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act, (2) in trade or commerce, (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The Washington State Supreme Court recently held that "consulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim, although the latter is insufficient to show injury to business or property, the former is not." *Frias v. Asset Foreclosure Servs., Inc*., 181 Wn.2d 412, 431, 334 P.3d 529, 537 (2014) (citing *Panag,* 166 Wn.2d at 62). Moreover, mere involvement in having to defend against a collection action and having to prosecute a CPA counterclaim is insufficient to show injury to business or property. *Panag*, 166 Wn.2d at 60 (citing *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc*., 64 Wn. App. 553, 564, 825 P.2d 714, 720 (1992)). To hold otherwise would be to invite defendants in most, if not all, routine collection actions to allege CPA violations as counterclaims. *Sign-O-Lite*, 64 Wn. App at 564.

In the instant matter, the Court agrees with Defendants that Plaintiff's failure to meet his debt obligations is the "but for" cause of the default, and thus, his alleged expenses were incurred in defending against the pending collection action. Further, Plaintiff's purported damages of "money which [was] spent trying to obtain [an] accurate payoff and reinstatement figures [including] money paid for fuel, office supply, postage and shipping, and money paid for attorney

fees," Dkt. #23 at ¶ 52, did not arise from the alleged CPA violation because, as pleaded in the FAC, those alleged costs were incurred in preparation of instituting the instant CPA action. Thus, Plaintiff has not alleged facts showing that he incurred damages giving rise to a CPA claim. Accordingly, Count Three is dismissed because Plaintiff has not adequately pleaded damages arising from a CPA claim.

### 4. Count Four: Alleged Negligence to as to Nationstar

Next, Defendants move to dismiss Count Four of the FAC. *See* Dkt. #24 at 15. In Count Four, Plaintiff alleges negligence against Nationstar. Dkt. #23 ¶ ¶ 53-57. Specifically, Plaintiff alleges Nationstar owed him a duty of care and honesty as a loan servicer, Nationstar breached its duty by inducing him to apply for a loan modification without the intention of honoring it, and Nationstar's breach proximately caused Plaintiff unnecessary accrued interest, late fees, foreclosure fees, and legal fees. Dkt. #23 ¶ ¶ 53-57. Defendants argue that Plaintiff's alleged negligence claim fails because he has not pleaded the necessary elements. Dkt. #24 at 15. Specifically, Defendants argue that they do not owe Plaintiff an independent duty outside of their contractual relationship. *See* Dkt. #27 at 7 (citing *Eastwood v. Horse Harbor Found., Inc.,* 170 Wn.2d 380, 394, 241 P.3d 1256, 1264 (2010)). The Court agrees with Defendants.

First, in order to recover on a Washington State common law claim of negligence, a plaintiff must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387, 389 (2013). As a matter of law, courts define the duty of care and the risks of harm falling within the scope of that duty. *Eastwood,* 170 Wn.2d at 395. The existence of a duty may be predicated upon statutory provisions or on common law principles. *Degel v. Majestic Mobile Manor, Inc.,* 129 Wn.2d 43, 49, 914 P.2d 728, 731 (1996).

Plaintiff's negligence claim is not based on contractual duties under the Deed of Trust, but rather, the claim is based on common law principles. *See* Dkt. #23 at ¶ ¶ 53-58. Neither party has identified, nor has the Court found, specific Washington case law addressing whether a servicer has a common law duty of care to a borrower during loan modification negotiations in Washington State. The Ninth Circuit is also silent with regard to this issue. Plaintiff points to cases in California and Hawaii to support his claim. *See* Dkt. #26 at 11. The California Supreme Court outlined a six-factor balancing test for determining whether a financial institution owes a duty of care to a borrower. *See Biakanja v. Irving,* 49 Cal.2d 647, 650, 320 P.2d 16 (1958). Additionally, some District Courts in California have held that when a lender agrees to consider a borrower's loan modification application, it then owes a duty of care in how it processes that application. *See Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1268 (N.D. Cal. 2014) ("plaintiff adequately alleged that Wells Fargo owed him a duty of care in processing his loan modification application"); *Ansanelli v. JP Morgan Chase Bank, N.A.,* 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) ("defendant went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification").

However, the Court finds those cases unpersuasive because of Washington's independent duty doctrine, which states "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood,* 170 Wn.2d at 394. If there is no independent duty arising outside of a party's contractual duties, there can be no tort remedy. *Id.* Similarly, this Court recently found that "Wells Fargo owed no independent duty to plaintiff outside the terms of the Promissory Note and Deed of Trust." *Congdon v. Wells Fargo Bank, N.A.*, 2017 WL 2443649, at *5 (W.D. Wash. June 6, 2017); *see also Schwartz v. World Sav. Bank*, No., 2012 WL 993295, at *7 (W.D. Wash. Mar. 23, 2012) ("[p]laintiff's have failed to allege any

independent duty that the Bank owed to [them] outside the terms of the Promissory Note and Deed of Trust.")

In the instant matter, Plaintiff admits that Nationstar does *not* owe him a fiduciary duty. Dkt. #23 at ¶ 57. Instead, Plaintiff alleges a general duty of care because Nationstar allegedly went beyond its role as a silent lender and loan servicer to offer an opportunity to Plaintiff for loan modification. Dkt. #26 at 11. Plaintiff relies on *Ansanelli* and *Garcia, supra*, in support of his claim. *Id*. While those California cases are informative, they are not persuasive because of Washington State's independent duty doctrine. *Eastwood,* 170 Wn.2d at 394. Even assuming that Plaintiff adequately pleaded the resulting injury and proximate causation elements of his negligence claim, he fails to adequately allege that Nationstar owed him a duty outside of their contractual relationship, and therefore Count Four is dismissed.

### 4. Count Six: Alleged Negligence as to Wells Fargo as Principle of Nationstar

Finally, Defendants move to dismiss Count Six of the FAC. *See* Dkt. #24 at 15. In Count Six, Plaintiff alleges negligence against Wells Fargo as principle of Nationstar. Dkt. #23 at ¶ ¶ 62-63. Specifically Plaintiff alleges that "where Plaintiff has proven negligence [as to Nationstar], Wells Fargo is liable to Plaintiff for actions taken by Nationstar." *Id*. at ¶ 63. For reasons previously discussed, Plaintiff has not adequately pleaded facts giving rise to a Washington State negligence claim, and therefore, Count Six is dismissed with prejudice.

## C. Leave to Amend

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson* 809 F.2d 1446, 1448 (9th Cir. 1987); *see also Desoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Circ. 1992) ("A district court does not err in denying

leave to amend where the amendment would be futile.") (citing *Reddy. V. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Circ. 1990)). Here, the Court concludes that granting leave to amend the dismissed counts would be futile. Given that Plaintiff has already been provided with the opportunity to amend his initial Complaint, and given that he has attempted to remedy previously identified deficiencies but failed to do so, the Court finds that the dismissed counts cannot be cured by further amendment, particularly given the documentary evidence provided by Defendants and the invalidity of Plaintiff's primary legal arguments as discussed above. Accordingly, Plaintiff's Counts two, three, four, and six are dismissed with prejudice.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendants Nationstar and Wells Fargo's Motion to Dismiss (Dkt. #24) is GRANTED IN PART and DENIED IN PART as discussed above.

DATED this 11th day of April 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 23